**Denon KITT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 98–CF–1013.**

District of Columbia Court of Appeals.

Argued April 20, 2005.

Decided Aug. 3, 2006.

---

Lois R. Goodman, Newark, NJ, with whom David J. Ontell, Washington, DC, was on the brief, for appellant.

Charles Neil Floyd, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, John R. Fisher, then Assistant United States Attorney, and Thomas J. Tourish, Jr., and Patrick J. Rowan, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL, RUIZ and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Appellant Denon Kitt was charged as one of two participants in the armed robbery, abduction and murder of Jesse Lee Baker. Tried separately from his alleged accomplice, Kitt was convicted of one count of first-degree premeditated murder while armed, three counts of first-degree felony murder while armed, the three predicate felonies of armed robbery, kidnapping and carjacking, and possession of a firearm during a crime of violence. Although Kitt challenges his convictions on a variety of grounds, we affirm all but two of them. Our recent en banc decision in *Wilson–Bey v. United States*, 903 A.2d 818 (D.C.2006) requires us to reverse Kitt's premeditated murder and felony murder (carjacking) convictions (but not his two other felony murder convictions) for lack of proof that he had the requisite *mens rea* to commit those two offenses.

## I. The Evidence at Trial

Jesse Lee Baker, the decedent, was the landlord of an apartment building complex located in the 3700 block of First Street, S.E., in the District of Columbia. When Baker made a visit to the complex to receive a $300 money order from a tenant, Kitt and a second man, who was later identified as Steven "Sweets" Crockett, were there waiting for him.[1] The two men accosted Baker as he was about to leave, frisking him and pushing him onto the hood of his car. Witnesses who knew and recognized Kitt saw him remove Baker's car keys from Baker's pants pocket and heard him ask Baker "What you got, what you got?" The two men then forced Baker into the back of his car and drove off, with Kitt at the wheel and Crockett in the front passenger seat. They were gone by the time the police arrived.

That evening, police officers responding to a report of a shooting in the 2200 block of Prout Street, S.E., came upon Baker's stolen car in an alley. Baker's body, clad only in a T-shirt, was lying in the back seat. Baker had been shot in the right side of his head and shoulder, and also in his wrist and hand.[2] Kitt had been observed in the vicinity of Prout Street earli-

---

1. Witnesses testified that Kitt inquired when Baker was expected to arrive.

2. In addition to recovering the fatal bullets, which could have been fired by a .38 caliber revolver, the police found the $300 money order that Baker had collected. Crockett's fingerprint was on the money order.

er that evening by a witness who knew him from the neighborhood. This witness testified at trial that he saw Kitt removing his coat and "running fast" down R Street, away from Prout Street and toward his grandmother's house.

Another prosecution witness, Kitt's close friend Tom Catlett, testified that Kitt came to him and said that "he had got into a situation that he wasn't supposed to be in" with Crockett—"a murder situation." Kitt told Catlett that "Sweets" unexpectedly shot someone with whom they were riding in a car: "He [Kitt] said he took his eyes off the scene for a minute and a gun went off." [3]

To the detectives who arrested him, Kitt denied being present when Baker was killed but admitted being in Baker's car afterward. Describing himself as a car thief, Kitt said that he happened upon the car on Prout Street, saw that its door was open, got in, and looked around for the keys in order to steal the vehicle. Upon glancing in the back seat, however, he saw Baker's dead body. Immediately, he said, he jumped out of the car, slammed the door and ran.[4]

## II. The Murder Convictions

### A. First-degree Premeditated Murder

 First-degree premeditated murder is murder committed with the specific intent to kill after premeditation and deliberation. *Williams v. United States*, 858 A.2d 984, 1001 (D.C.2004). "Premeditation means that the defendant formed the specific intent to kill the victim for some length of time, however short, before the murderous act." *Id.* (internal quotation marks and citations omitted). Delibera-

tion, "which is separate from premeditation, requires that there was the reflection and turning over in the mind of the accused concerning his existing design and purpose to kill." *Id.* (internal quotation marks and citation omitted). Thus, in order for a charge of first-degree premeditated murder to be sustained, "the evidence must demonstrate that the accused did not kill impulsively, in the heat of passion, or in an orgy of frenzied activity." *Frendak v. United States*, 408 A.2d 364, 371 (D.C.1979).

 Kitt's argument that there was insufficient evidence of premeditation, deliberation or even a specific intent to kill on his part is well-taken. As a general rule, the requisite *mens rea* may be inferable from the facts and circumstances surrounding a murder, *Ruffin v. United States*, 642 A.2d 1288, 1291 (D.C.1994), but it is difficult to draw that inference in this case because the circumstances of Baker's killing remain shrouded in mystery. The only eyewitness account of the shooting presented at trial was Kitt's version as reported by Catlett. According to that truncated account, Kitt neither anticipated nor intended the shooting. While the jury was free to disregard Kitt's account as self-serving and unreliable, it had no other direct evidence of exactly what occurred when Baker was killed. Arguably, as the government contends, there was sufficient evidence of premeditation and deliberation (and more than sufficient evidence of a specific intent to kill) *on the part of the shooter*, given that he brought the murder weapon to the scene, had ample time in which to contemplate and plan the shooting, fired more than one shot, and had a

---

3. Catlett also testified that Crockett had displayed a .38 caliber revolver to him and Kitt a few weeks before the shooting.

4. Although Kitt did not testify at trial, he presented an alibi defense, which need not be described here.

motive to eliminate Baker as a witness.[5] *Cf. Baker v. United States,* 867 A.2d 988, 1008 (D.C.2005); *Busey v. United States,* 747 A.2d 1153, 1161–62 (D.C.2000). But there was no proof that Kitt was carrying a handgun or that he was the shooter; the only evidence was that it was Crockett.[6] That Kitt carried out a preconceived plan to rob and abduct Baker certainly supported Kitt's conviction for felony murder, but it did not establish that Kitt also premeditated and deliberated Baker's slaying.

■ Kitt was prosecuted on the theory that he would be guilty of Baker's premeditated murder as an aider and abettor even if he did not intend it, so long as it was a "natural and probable consequence" of the other crimes (robbery, kidnapping, carjacking) he did intend to commit. Over Kitt's objection, the jury was instructed in accordance with that theory,[7] which did have support in our case law at the time of Kitt's trial. *See, e.g., Morriss v. United States,* 554 A.2d 784, 789 (D.C.1989). More recently, however, in *Wilson–Bey, supra,* this court sitting en banc disavowed both the "natural and probable consequence" theory of aiding and abetting liability for premeditated murder and the jury instruction embodying that theory. We explained that the "natural and probable consequence" theory and instruction are erroneous and, indeed, unconstitutional, precisely because they purport to authorize a jury to find a defendant guilty as an accomplice to a crime without proof—required by both that crime and the aiding and abetting statute—that the defendant himself had the essential *mens rea* to commit that crime. The correct rule with respect to premeditated murder, we held, is that the prosecution must prove that the defendant personally had the requisite mental state to commit the offense—*i.e.,* that the defendant acted with a specific

---

**5.** Even as to the shooter, the question of premeditation and deliberation is a close one. Kitt argues that it is equally consistent with the evidence to infer that Crockett shot Baker out of frustration and anger after discovering that Baker was not carrying any large amount of cash. That may be so, but in evaluating the sufficiency of the evidence, we must view it in the light most favorable to the government, giving full play to the jury's right to determine credibility, weigh the evidence, and draw justifiable inferences of fact. *Rivas v. United States,* 783 A.2d 125, 134 (D.C.2001) (en banc). The prosecution need not negate every possible inference of innocence. *Irick v. United States,* 565 A.2d 26, 31 (D.C.1989). The key point is that the verdict cannot rest on mere speculation; we must be satisfied that there was some evidence on which a reasonable jury really could find the essential elements of the offense, including the essential *mens rea,* beyond a reasonable doubt. *Id.*

**6.** Kitt's statement to Catlett to the effect that Crockett was the shooter was corroborated by Catlett's testimony about Crockett's display of a handgun that could have been the murder weapon. (No witness claimed to have seen Kitt in possession of a handgun.) The fact that Baker was shot on his right side might also be taken to indicate that Crockett was the shooter rather than Kitt, given where the three men last were seen sitting in the car. We note that at Kitt's sentencing, the government acknowledged that Kitt "was not the person who fired the fatal bullets," and the trial judge similarly expressed his understanding that "Mr. Kitt was not the shooter."

**7.** In delivering what was then the standard jury instruction on aiding and abetting in the District of Columbia, the trial court included the following:

It's not necessary that the defendant have had the same intent that the principal offender had when the crime was committed, or that he intended to commit the particular crime committed by the principal offender. An aider and abettor is legally responsible for the acts of the other persons that are the natural and probable consequence of a crime in which he intentionally participates.

*See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Instruction 4.02 (revised 4th ed.2005).

intent to kill after premeditation and deliberation—whether the defendant is charged as the principal actor or as an aider and abettor.

■ Accordingly, because the government failed to present and the jury instruction failed to require the necessary proof of specific intent to kill, premeditation and deliberation by Kitt, we reverse his first-degree premeditated murder conviction for insufficiency of the evidence.[8]

### B. The First-degree Felony Murder Convictions

■ The first-degree murder statute, D.C.Code § 22–2101, defines two types of felony murder, with differing *mens rea* requirements, depending on whether the underlying felony is specifically enumerated in the statute or not. If a lethal injury is inflicted in the perpetration (or attempted perpetration) of an enumerated felony, it is first-degree felony murder even if the perpetrator did not intend to kill the victim. The only intent required to be guilty of the offense is the intent to commit the underlying felony. *Lee v. United States*, 699 A.2d 373, 385 (D.C. 1997). On the other hand, if the lethal act was in furtherance of an unenumerated felony, it is not first-degree felony murder unless the perpetrator actually did intend to kill the victim (though the perpetrator need not have acted after premeditation and deliberation). *See Comber*, 584 A.2d at 39 & 39 n. 14; *Goodall v. United States*, 86 U.S.App. D.C. 148, 150, 180 F.2d 397, 399 (1950). *See also* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Instruction 4.23(I)(B).

■ Kitt was convicted of three counts of felony murder, one each for the robbery, kidnapping and carjacking of which he was found guilty. While robbery and kidnapping are enumerated felonies, carjacking is not an enumerated felony. This difference is important in view of the lack of sufficient evidence of a specific intent to kill on Kitt's part. Kitt's convictions as an aider and abettor of felony murder based on the robbery and the kidnapping stand even if he had no such intent. As our opinion in *Wilson–Bey* explains, it is not error to give the "natural and probable consequence" instruction with respect to a felony murder charge based on an enumerated felony, because an intent to kill does not need to be proved for a defendant to be convicted on such a charge, either as a principal actor or as an aider and abettor. *See id.*, at 354. Thus, Kitt could be found

---

8. Kitt challenges his premeditated murder conviction on the additional ground that the trial court did not instruct the jury on the need to find "malice," even though the statute defines the offense in terms of killing another "purposely ... [with] deliberate and premeditated malice." D.C.Code § 22–2101 (2001 & 2005 supp.). Kitt's failure to object to the instruction on this ground at trial means that we review only for plain error, but there was no error at all. The trial court delivered the standard instruction used in this jurisdiction to define premeditated murder in cases in which there is no evidence of self-defense or mitigation. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Instruction 4.17. Following this court's suggestion in *Comber v. United States*, 584 A.2d 26, 42 n. 18 (D.C.

1990) (en banc), the standard instructions eschew the vague word "malice" whenever possible in favor of describing with specificity the mental state (or states) encompassed within the term, so as to provide clearer guidance to the jury. *See Burton v. United States*, 818 A.2d 198, 200 (D.C.2003) (approving standard instruction on crime of malicious disfigurement). In the case of first-degree premeditated murder, as the commentary to Instruction 4.17 explains, the statutory term "purposely" is synonymous with "intentionally," *Collazo v. United States*, 90 U.S.App. D.C. 241, 246–47, 196 F.2d 573, 578–79 (1952), and the malice element therefore is satisfied only by proof of a specific intent to kill—which is just what Kitt's jury was told it had to find (in addition to premeditation and deliberation).

guilty of felony murder (robbery) and felony murder (kidnapping) based solely on his culpable participation in the enumerated felonies. *See Lee,* 699 A.2d at 385.[9]

 It is otherwise with regard to the felony murder count based on the carjacking. Although *Wilson–Bey* addressed accomplice liability for first-degree premeditated murder, its reasoning and holding apply to other aiding and abetting situations in which an accomplice is charged with an offense requiring proof of specific intent. In all such situations, the rule is exactly the same: where a specific *mens rea* is an element of a criminal offense, a defendant must have had that *mens rea* himself to be guilty of that offense, whether he is charged as the principal actor or as an aider and abettor.[10] Thus, to be guilty as an aider and abettor of a felony murder based on an unenumerated felony, a defendant must be shown to have specifically intended the killing. To hold otherwise would be to obliterate, for accomplices only, the material difference between the two types of felony murder. Accordingly, Kitt's conviction on the felony murder (carjacking) count must be reversed, both because the "natural and probable consequence instruction" was improper with respect to that count, and because the evidence that Kitt had the specific intent to kill Baker was lacking.

## III. Remaining Challenges

Kitt's challenges to his remaining convictions do not call for extended discussion. Kitt primarily claims that his statements to the police following his arrest should have been suppressed because they were obtained in violation of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Kitt was arrested in Virginia. As soon as a detective introduced himself and told Kitt that he was under arrest for a murder on Prout Street, Kitt launched into his explanation that he had nothing to do with the homicide and merely had attempted to steal the abandoned car in which Baker's body was found. The detective interrupted Kitt for *Miranda* warnings, which a second detective proceeded to read to him from a standard Fairfax Police Department form. As this was being done, Kitt interjected and tried to resume and reiterate his story, but he was told to wait until the detective was finished. Kitt read and initialed each warning himself and then read over and signed the completed waiver form. After that, Kitt repeated his account and responded to the detectives' questions until one of them happened to comment that they had tracked Kitt down in Virginia with the aid of his friend "Kenny." At that point Kitt asked for an attorney, and the interview was terminated.

9. Although Kitt has attempted to dispute it, the jury readily could find that Baker's murder was committed "in furtherance of the common design or plan to commit the underlying [enumerated] felon[ies], or [was] the natural and probable consequence of acts done in the perpetration of" those felonies. *Lee,* 699 A.2d at 385 (internal quotation marks, brackets and citations omitted). While the precise reason Baker was killed is unknown, it would strain credulity to suggest that his death had *no* causal connection with his robbery and abduction. Indeed, in the absence of any evidence of an intervening cause, it is enough to sustain the jury's findings of guilt that those "underlying felon[ies] and the killing were all part of one continuous chain of events." *Id.* (internal quotation marks and citations omitted).

10. This rule follows from the basic requirement, originally articulated and explained by Judge Learned Hand in *United States v. Peoni,* 100 F.2d 401 (2d Cir.1938), and now almost universally accepted, that "the accomplice be shown to have intended that the principal succeed in committing the charged offense." *Wilson–Bey,* at 903 A.2d at 831.

In denying Kitt's motion to suppress, the trial court found that his pre-warning statements were admissible because they were not the product of custodial "interrogation" within the meaning of *Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). We agree; merely informing Kitt that he was charged with a murder on Prout Street did not amount to "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *Id.*; *see Hawkins v. United States*, 461 A.2d 1025, 1031 (D.C.1983). As to Kitt's post-warning statements, the trial court's finding that Kitt waived his rights knowingly, intelligently and voluntarily is well supported by the detectives' uncontradicted testimony. Kitt was informed of his *Miranda* rights fully and correctly, and he was not pressured into waiving them; on the contrary, as the trial court observed, Kitt "obviously wanted to speak," and "when he wanted to stop, he knew to say: I now want a lawyer." Kitt's waiver was not *per se* invalid merely because he did not make an express statement that he wished to waive his rights and speak with the police. *See North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).[11]

Kitt also complains about the trial court's response to two notes from the jury during its deliberations. One of the notes inquired about the availability of portions of Catlett's grand jury testimony that had not been introduced in evidence. The other note asked about the availability to testify of a person named Cheryl Banks, who was not a witness but who was named during the trial as someone who had seen

Baker's abduction. The trial court responded by telling the jury, "You may consider all the testimony you have and any exhibits you have; however, the record is closed. Do not speculate about matters outside the record." Kitt objected to the last sentence on the ground that, considered in isolation, it might deter the jury from evaluating evidence that had been admitted regarding Catlett and Banks. We find this argument far-fetched, and we fail to perceive any likelihood of prejudice. The instruction was responsive to the jury's stated concern; it was correct; and it was not "unbalanced" as Kitt contends. In essence, the court simply told the jury to consider the evidence presented and not to speculate about evidence not presented. We see no reason to think the jury misunderstood that simple notion. "Decisions regarding reinstruction of a jury are committed to the discretion of the trial court; absent abuse of that discretion we will not reverse." *Davis v. United States*, 510 A.2d 1051, 1052 (D.C.1986). There was no abuse here.

Finally, Kitt asserts that his attorney rendered ineffective assistance at sentencing by giving "a complete cookie cutter allocution applicable to anyone, regardless of crime or station in life," by "provid[ing] no roadmap for the sentencing judge to fit the [sentence] to [Kitt's] rehabilitation needs ... in any way," and by referring in his sentencing memorandum to Kitt's "future ability to be a good role model to his children, when the presentence report indicated that [Kitt] does not have any children."[12] These bare assertions are too conclusory to persuade us that counsel's performance was either deficient or preju-

---

**11.** Kitt's related argument that his (superficially) exculpatory statement was not voluntary is without merit. *See Colorado v. Connelly*, 479 U.S. 157, 164–67, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (explaining that some

kind of police coercion is necessary for a finding of involuntariness).

**12.** Kitt did not request a hearing on his ineffective assistance claim by mounting a collat-

dicial. *See Strickland v. Washington*, 466 U.S. 668, 686–87, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In point of fact, counsel's allocution was not "cookie cutter." Citing Kitt's youth and potential for rehabilitation,[13] counsel opposed the government's requested sentence of life imprisonment without parole and sought leniency in the form of concurrent sentencing. Counsel also brought Kitt's family to court, presented a letter from his mother, and urged the court to disregard the presentence report writer's finding that Kitt showed no remorse. Kitt does not say what more his attorney could have done, and we have no basis to think that he could have obtained a more lenient sentence. As it was, the trial court rejected the government's life without parole recommendation[14] and sentenced Kitt instead to the minimum possible sentence for first-degree murder, imprisonment for thirty years to life. *See* D.C.Code § 22–2104(b) (2001). The court deemed it "necessary" to impose consecutive sentences for the armed robbery and carjacking (though not also for kidnapping) because those crimes were committed separately from the ensuing murder. Kitt makes no plausible claim that his counsel could have persuaded the court to do otherwise.

## IV. Merger

The remaining counts of conviction are subject to merger. Specifically, since Kitt can be convicted of only one first-degree murder for Baker's killing, *see Thacker v. United States*, 599 A.2d 52, 63 (D.C.1991), one of the two remaining felony murder counts (the counts based on armed robbery and armed kidnapping) should be vacated. *See Garris v. United States*, 465 A.2d 817, 823 (D.C.1983). The surviving felony murder count then will merge with its underlying felony, *see Jones v. United States*, 828 A.2d 169, 181 (D.C.2003), while the other felonies will survive without merger.[15] *Mitchell v. United States*, 629 A.2d 10, 11 n. 2 (D.C.1993). We leave it to the trial court on remand to effectuate these mergers and to resentence Kitt in accordance therewith. Since the trial court imposed a consecutive sentence on the robbery count and a concurrent sentence on the kidnapping count, we presume that the court will vacate the felony murder count based on the former rather than the latter felony so as to preserve the consecutive sentence structure it initially elected to impose. That, however, is a matter for the trial court to decide in the exercise of its sentencing discretion.

## V. Conclusion

Kitt's convictions of first-degree premeditated murder and first-degree felony murder (carjacking) are reversed on grounds of insufficient evidence. His oth-

eral challenge to his conviction pursuant to D.C.Code § 23–110 (2001). Instead, he has raised the claim for the first time in his direct appeal and has urged us to resolve it on the basis of the existing record. We have warned, however, that "in the overwhelming majority of cases, it is inappropriate to raise the issue of ineffective assistance of counsel on direct appeal" because a collateral attack usually will be essential to amplify and substantiate the claim. *Simpson v. United States*, 576 A.2d 1336, 1338 (D.C.1990).

13. The allegedly erroneous reference to Kitt's children was at worst a small mistake that played no role in Kitt's sentencing.

14. The court declined to sentence Kitt to life without parole on the grounds that (1) Kitt was not the shooter; (2) the circumstances of the killing were unknown; and (3) Kitt did not have a significant criminal record.

15. Contrary to Kitt's argument, his convictions for armed carjacking and armed robbery do not merge. *Pixley v. United States*, 692 A.2d 438, 440 (D.C.1997).

er convictions are affirmed and his case is remanded for the trial court to vacate counts that merge and resentence Kitt as appropriate.

*So ordered.*