Dewand SUTTON, Appellant,

v.

UNITED STATES, Appellee.

No. 06–CF–852.

District of Columbia Court of Appeals.

Argued Dec. 1, 2009.
Decided Feb. 4, 2010.

Judith A. Lovelace, appointed by the court, for appellant.

Sarah Chasson, Assistant United States Attorney, with whom Roy W. McLeese III, Chrisellen Kolb, and Matthew Cohen, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and OBERLY, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

Dewand Sutton appeals his convictions for carjacking while armed,[1] receiving stolen property (RSP),[2] and unauthorized use of a vehicle (UUV).[3] He argues that the evidence of armed carjacking was insufficient for conviction; that also as to armed carjacking, the jury instruction on aiding and abetting was reversible error; and that the RSP and UUV convictions merge. We reject the sufficiency claim, find no plain error in the aiding and abetting instruction, and conclude that the RSP and UUV convictions do not merge. Accordingly, we affirm.

## I. Proceedings and Evidence

At Sutton's jury trial, the government put on the following evidence: On November 16, 2003, Lamont Wright, Rodney Smith, and appellant Sutton got out of a parked car to accost Dwayne Cox as he walked away from his parked Mitsubishi Spyder. By the time the trio confronted Cox, he had walked about three car lengths from the Spyder toward the home of an acquaintance, where he was going to watch a sporting event on television. Cox was told to lie on the ground, where Sutton held him at gunpoint as the assailants robbed him of his car keys, a telephone, and approximately $18 in cash. The men told Cox not to move or he would be shot. At that point, in the words of Sutton's brief,

> two of the men [Sutton and Smith] got back into their own car, started it up and began to drive off; Mr. Cox got up from the ground and jumped over the fence behind the friend's house; then the [Sutton and Smith] car stopped, and

the two men in the car said they were going to start shooting at him; then, at the same time, [Cox] heard his own car start up and pull off [driven by Wright].

According to the government's evidence, two days later, on November 18, at the instance of Sutton, he and Smith robbed Fred Cooper and Kirk Little of cash and other pocket items at gunpoint. Then Smith drove away in Cooper's Chevrolet Caprice, and Sutton drove off in Little's Ford Taurus. On November 20, police apprehended Smith in Cox's Spyder and found a loaded, cocked pistol under a car seat. Later that day, in the same vicinity, the police saw Wright driving the Taurus. That evening, the police saw the Taurus again, this time driven by Sutton, who led them on a high-speed chase that ended in a crash from which Sutton fled, discarding the telephone stolen four days earlier from Cox. Sutton was apprehended, and his fingerprints were found on the door of the Taurus, as well as on a compact disc from the Spyder.

The jury found Sutton guilty on one count each of armed carjacking, armed robbery, PFCV, RSP, UUV, destroying property, and possession with intent to distribute cocaine. The carjacking conviction was attributable to the incident involving Cox and his Spyder, whereas the RSP and UUV convictions arose out of the theft two days later of the Taurus. For the convictions at issue here, Sutton was sentenced to fifteen years in prison for armed carjacking and, consecutively to the carjacking, concurrent sentences of twenty months of incarceration for RSP and thir-

events for armed robbery, possession of a firearm during a crime of violence or dangerous offense (PFCV), destroying property, and possession with intent to distribute cocaine.

ty-two months for UUV. This appeal followed.

## II. Sufficiency of the Evidence

### A. Alleged Waiver of the Sufficiency Challenge

■ We consider, first, sufficiency of the evidence for armed carjacking. Before addressing the merits, however, there is a threshold issue raised by the government. Although the defense moved for a judgment of acquittal (which was denied) at the end of the government's case, that motion was not renewed after the defense had presented three witnesses.[4] Therefore, contends the government, Sutton has waived any challenge to evidentiary sufficiency. We cannot agree.

"[A]lthough the failure to renew a motion for acquittal at the close of the entire case would waive review of that motion, it '[w]ould not foreclose review of the sufficiency of the evidence. It simply requires that the scope of review be expanded to include *all* of the evidence.'" *Wheeler v. United States*, 494 A.2d 170, 171–72 (D.C. 1985) (emphasis in original) (quoting *Washington v. United States*, 475 A.2d 1127, 1129 (D.C.1984)).[5] Accordingly, although Sutton did not renew his motion for judgment of acquittal at the close of all the evidence, his challenge is not waived, and we review all the evidence for its sufficiency on the charge of armed carjacking.

### B. Elements of Carjacking While Armed

■ When an appellant contends that the evidence was insufficient for conviction, we inquire only into whether the government presented "at least some probative evidence" as to each element of the crime, viewing the evidence in the light most favorable to the government and recognizing that it is the fact-finder's province to weigh evidence, assess credibility, and draw reasonable inferences. *Downing v. United States*, 929 A.2d 848, 857 (D.C. 2007) (internal citations omitted). This court, however, reviews de novo the elements of the crime which the prosecution must prove and against which sufficiency of the evidence is assessed. *See, e.g., Wilson–Bey v. United States*, 903 A.2d 818, 827 (D.C.2006) (en banc).

Now to the merits. "Carjacking" is committed when a person [1] "knowingly or recklessly" [2] uses "force or violence" to [3] "take from another person immediate actual possession of [4] a person's motor vehicle," or when someone "attempts to do so." D.C.Code § 22–2803(a)(1).[6] If convicted of carjacking "while armed," moreover, the defendant shall be imprisoned for a "mandatory-minimum term of

---

4. In his defense, Sutton presented the testimony of two police officers to show, respectively, that Little had been unable to identify his assailants and had made contradictory statements about the cause of an injury to his hand on November 18. Sutton also called a third officer to testify about a particular description of a man named "Sam."

5. Although we have held in other cases that the failure to renew a motion for a judgment of acquittal precludes review of evidentiary sufficiency on appeal, *see, e.g., Noaks v. United States*, 486 A.2d 1177, 1178–79 (D.C.1985), we held in *Wheeler* that, "[t]o the extent, if

any, that *Noaks* is inconsistent with … *Washington*[,] … *Washington* controls." *Wheeler*, 494 A.2d at 172; *see, e.g., Thomas v. United States*, 731 A.2d 415, 420 n. 6 (D.C.1999) ("Where a division of this court fails to adhere to earlier controlling authority, we are required to follow the earlier decision rather than the later one.") (citing *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971)).

6. We understand the third and fourth elements, taken together, to mean: "take [4] a person's motor vehicle [3] from that person's immediate actual possession."

not less than 15 years" (with a maximum of forty years). *Id.* §§ 22–2803(b)(1) & (2); *see Allen v. United States,* 697 A.2d 1, 2 (D.C.1997) (specifying elements of carjacking). Sutton only challenges sufficiency of the evidence to support the second and third elements of carjacking, and he does not question sufficiency of the evidence that he was armed.

In describing the "Background and Need" for the carjacking statute at the time of enactment, the Council of the District of Columbia Committee on the Judiciary emphasized the "especially traumatic experience" of the victim, whose "zone of privacy" is invaded "in a way that perhaps is similar only to burglary" and whose "mobility" and "means of earning a living" are taken from him.[7] Thus, the Council likened a carjacking to intrusion into the home, perceived as more serious—more invasive of one's private, protected environment—than, say, a robbery on the street. In fact, by imposing a fifteen-year mandatory minimum sentence for an armed carjacking, the Council put the offense at issue here at a noticeably more serious level of concern than that reflected in the statutes imposing five-year mandatory minimums for first-degree burglary and first-time armed robbery.[8] With such a severe difference at stake in the respective minimum sentences for armed robbery and armed carjacking, the concepts of "force or violence" and "immediate actual possession," as applied in a carjacking prosecution, must be addressed with considerable care.

### C. "Force or Violence"

▮ Sutton contends that although the keys to Cox's car were taken by force and violence, the car itself was not. Although he does not challenge the court's jury instruction,[9] Sutton argues that the armed robbery of Cox's person (including the taking of his keys) and the theft of the car were discrete events, such that the use of force to accomplish the first cannot, as a matter of law, figure in analysis of the second. In support, he observes that Cox began to flee after ceding his keys but before his car was driven away.

We cannot agree with Sutton's argument on the facts. Although Cox managed to run from his captors, he was still within their purview, under immediate threat of death,[10] at the time the car was taken. This is demonstrable from the sequence of events presented in Sutton's own brief on appeal, as quoted above in Part I. After the keys were taken from Cox and as Sutton and Smith began to drive off in their own car, "Cox got up from the ground and jumped over the fence behind the friend's house," at which point Sutton and Smith stopped their car and "said they were going to start shooting at him"—a statement from Sutton's own brief implying that Cox's assailants were in a position to do so. *"[A]t the same time,"* according to Sutton's brief, and supported by the trial transcript, Cox "heard his own car start up and pull off." (Emphasis added.) This recitation effectively concedes that the violence against Cox continued until the moment his car was stolen.

---

7. Council of the District of Columbia, Committee on the Judiciary, Report on Bill 10–16, "The Carjacking Prevention Amendment Act of 1993," at 2 (Feb. 10, 1993).

8. *See* D.C.Code §§ 22–801(a) (burglary), –2801 (robbery), –4502(a)(1) (2001) (armed offenses).

9. *See* Instruction No. 4.51, "Carjacking," in the Criminal Jury Instructions for the District of Columbia (4th ed. 1993).

10. The statute defines "force and violence" broadly to include "putting in fear," as well as "sudden or stealthy seizure or snatching," in addition to overt force or violence. D.C.Code § 22–2803(a)(1).

### D. "Immediate Actual Possession"

Given the requisite force or violence, therefore, Sutton's "sufficiency" contention turns on the third statutory element: whether Dwayne Cox's car was in his "immediate actual possession" at the time it was taken. The jury was instructed verbatim—without objection—from standard instruction 4.51:[11] "A motor vehicle is in the immediate actual possession of the complainant if it is located close enough that one could reasonably expect the complainant to exercise physical control over it." We deemed the jury "properly instructed" with that instruction in *Winstead v. United States*, 809 A.2d 607, 610 n. 4 (D.C.2002), where we affirmed a conviction for carjacking by a defendant who had assaulted the victim, initially, in the security-guard booth where she was working, and then appropriated her car "only a few feet away" from the booth. *Id.* at 611. That was "near enough," we said, for the car "to be in [the victim's] 'immediate actual possession' then and there." *Id. Winstead*, therefore, confirms carjacking when a defendant assaults someone several feet from her car and then straightaway takes the vehicle.[12]

In the present case, however, among the factual distinctions from *Winstead* and the other carjacking cases we have decided,[13] Cox was three car lengths, or forty-five to fifty feet, from his car—and continuing to walk away—when accosted by Sutton and his cohorts. The question thus becomes whether, at that distance under the circumstances, the government meets the "close enough" or "near enough" test required for a finding of "immediate actual possession."

### Application to Carjacking of "Immediate Actual Possession" under the Robbery Statute

■ This case, more than any other we have decided, see *supra* note 13, forces us to consider how far away a car must be from the victim before we can say, as a matter of law, that it is far enough to deprive the victim of "immediate actual possession," and thus too far away to turn a car thief into a carjacker. Our analysis is informed by the fact that, as explained in *Winstead*, the Council of the District of Columbia "borrowed the term 'immediate actual possession' from the robbery statute." 809 A.2d at 610. Thus, armed carjacking is, conceptually, a subset of armed

---

11. See *supra* note 9.

12. Apparently not essential to decision, this court reinforced its conclusion by adding that the defendant had "removed any doubt" about satisfying the "immediate actual possession" requirement by forcing the victim into her car and holding a gun on her as she drove away under his direction. *Winstead*, 809 A.2d at 611. Alternatively, it would appear, the *Winstead* court could have decided the possession question more narrowly by deeming the owner's immediate actual possession to have arisen at the point when the assailant forced the victim into her car and ordered her to drive away with him—as though he had come upon her while she was still at the wheel.

13. In addition to *Winstead*, we have upheld other carjacking convictions where victims have been outside the car but quite close to it. *See Beaner v. United States*, 845 A.2d 525, 529, 532–34 (D.C.2004) ("immediate actual possession" satisfied where victim had left car idling while he talked on pay telephone three feet away); *Downing*, 929 A.2d at 857 ("immediate actual possession" satisfied where victim was walking toward car with keys in hand). Moreover, in *Winstead*, 809 A.2d at 610, we expressly agreed with the D.C. Circuit's ruling in *United States v. Gilliam*, 167 F.3d 628, 639–40 (D.C.Cir.1999) ("immediate actual possession" under D.C. statute satisfied where carjacker confronted victim after he had stepped out of car to unlock parking lot gate).

robbery: the armed theft of a motor vehicle from the "immediate actual possession" of another person.[14]

In this court's decision in *Rouse v. United States*, 402 A.2d 1218 (D.C.1979), we defined "immediate actual possession" under the robbery statute by adopting the following language from the U.S. Court of Appeals for the District of Columbia Circuit:

[A] thing is within one's "immediate actual possession" so long as it is within such range that he could, *if not deterred by violence or fear,* retain actual physical control over it. That construction is harmonious with holdings elsewhere that the invasion of personal possession essential to robbery sufficiently appears where the property is so far under the personal protection of the victim that violence or intimidation is necessary to sever his control. (Emphasis added.) [*United States v. Dixon,* 152 U.S.App. D.C. 200, 204, 469 F.2d 940, 944 (1972)].

*Rouse,* 402 A.2d at 1220.

A few years later, however, we said more simply, without reference to deterrence "by violence or fear": "Immediate actual possession refers to the area within which the victim can reasonably be expected to exercise some physical control over the property." *Head v. United States,* 451 A.2d 615, 624 (D.C.1982). *Head's* formulation is derived from a D.C. Circuit case decided before *Dixon*[15] and is reflected in the standard jury instruction, No. 4.51, see *supra* note 9, quoted above and approved in *Winstead.*

■■ As the *Rouse* and *Head* formulations make clear, "immediate actual possession" has an elastic quality, reaching somewhere beyond "actual possession" at common law[16] into the realm of "constructive possession."[17] Accordingly, we confront this question: how far beyond literal actual possession is this elastic definition intended to go before particular facts trigger its snapping point?

When this court decided *Winstead,* approving standard jury instruction 4.51 reflecting *Head,* we also adopted language from *Gilliam,* see *supra* note 13, that in-

14. See *supra* note 7.

15. *United States v. Spears,* 449 F.2d 946, 955 (D.C.Cir.1971) (quoting *Spencer v. United States,* 116 F.2d 801, 802 (D.C.Cir.1940)) (Rutledge, J.).

16. "Actual possession," in the robbery context, does "not depend upon the niceties of property law but means nothing more than custody or control." *Spears, supra* note 15, 449 F.2d at 955. Indeed, this court has "consistently and for many years given a broad meaning to the term 'immediate actual possession' in the robbery statute." *Leak v. United States,* 757 A.2d 739, 742 (D.C.2000) (affirming conviction for bicycle robbery). We have noted, accordingly, that "the government need only demonstrate the actual physical taking of the property from the person of another even though without his knowledge and consent, *and though the property be unattached to his person." Id.* at 742 (quoting

*Johnson v. United States,* 756 A.2d 458, 462 (D.C.2000) (emphasis added)). This reach of the robbery statute to "unattached" property within the scope of "immediate actual possession" is traceable to *Spencer, supra* note 15, 116 F.2d at 802 (sustaining robbery conviction for taking wallet from trousers on chair belonging to victim across room in bed with prostitute) (discussed in *Leak,* 757 A.2d at 743).

17. When the law focuses not on the victim but on a defendant charged with a crime defined by reference to possession (illegal drugs, for example), and the contraband is found not on the person but nearby—say across the room— we have not adopted an expansive definition of actual possession but relied instead on the property law concept of "constructive possession" to justify guilt of the possessory offense. *See, e.g., Perkins v. United States,* 936 A.2d 303, 306 (D.C.2007); *Blackmon v. United States,* 835 A.2d 1070, 1075 (D.C.2003).

corporated the federal circuit court's earlier ruling in *Dixon* and our corresponding formulation in *Rouse*. More specifically, to evaluate evidentiary sufficiency, we held, "in agreement with the D.C. Circuit, that under the [District of Columbia] carjacking statute, immediate actual possession 'is retained if the car is within such range that the victim could, *if not deterred by violence or fear*, retain actual physical control over it.'" *Winstead*, 809 A.2d at 610 (quoting *Gilliam*, 167 F.3d at 639–40) (emphasis added). In sum, in *Winstead* we approved leaving the "violence or fear" language out of the standard jury instruction, No. 4.51, while incorporating those words into the rule announced to govern sufficiency analysis.

### Comparison of the Jury Instruction with the Sufficiency Test

■ Although there appears to be a possible disconnect between the jury instruction and the sufficiency test, Sutton does not question the instruction. And, although one would expect the jury instruction to track the sufficiency formula more completely than it does here, we cannot find a difference between instruction 4.51 and *Winstead's* sufficiency language that is significant enough to warrant a finding of material prejudice to Sutton.[18] For purposes of this appeal, the two formulations are close enough. Under both

*Head* (instruction 4.51) and *Dixon/Rouse* (evidentiary sufficiency), the scope or range of property within one's immediate actual possession is effectively the same, namely, an area delimited by how far away one can be from the property and yet reasonably [19] be expected to exercise physical control over it.

It would appear, in any event, that the words added to *Winstead's* sufficiency formula—"if not deterred by violence or fear"—were not intended to limit or circumscribe the area in which the victim could reasonably be expected to exercise that physical control. Rather, deterrence of the victim by violence or fear—the reason why the victim stays in place—would seem to be no more than the explanation for why a victim cannot reasonably be expected to retain or reestablish literal, actual possession, and thus the reason why the elastic definition of "immediate actual possession" is appropriate.

When, however, a juror looks carefully at instruction 4.51 limiting "immediate actual possession" to a vehicle located "close enough that one could reasonably expect the complainant to exercise physical control over it," that juror may ask, "Close enough to control for what purpose?" Presumably the instruction would mean closer than, say, merely close enough to

18. Ordinarily, given no objection—either at trial or on appeal—to the jury instruction on "immediate actual possession," we would expect to analyze sufficiency of the evidence under that instruction rather than apply a somewhat different formulation for sufficiency announced in the decisional law. In this case, however, we must apply this court's decision in *Winstead*, which approves a jury instruction and announces a sufficiency test that appear to be in tension with one another. For purposes of clarity in this case and those that follow, therefore, we address the relationship between these two formulations.

19. *Winstead's* sufficiency language, for "immediate actual possession," specifies the

range within which "the victim *could* ... retain actual physical control over" the vehicle, whereas the standard jury instruction, No. 4.51, requires that the vehicle be "located close enough that one *could reasonably expect* the complainant to exercise physical control over it." (Emphasis added.) There is no material difference here. *Winstead* undoubtedly announced an objective standard, such that its proper interpretation, as reflected in instruction 4.51, would mean the range within which "the victim could *reasonably be expected to* ... retain actual control over" the vehicle.

retrieve the car without delay after a party in the neighborhood. But, what else? Does the case law add clarification to the statutory meaning?

### Relevance of Federal Case Law

■ The federal courts were faced with interpreting language in the federal carjacking statute (take "from the person or presence of another")[20] that is the functional equivalent of the third element of the District's carjacking statute ("take from another person immediate actual possession"). In *United States v. Perez–Garcia*, 56 F.3d 1, 3 (1st Cir.1995), the court observed that the federal "carjacking statute does not define 'from the person or presence,' and neither do the robbery statutes upon which § 2119 was based." However, in *United States v. Lake*, 150 F.3d 269, 272 (3d Cir.1998), the court explained that "[t]he carjacking statute's requirement that the vehicle be taken 'from the person or presence of [another]' 'tracks the language used in other federal robbery statutes' " (citations omitted). Under these statutes, "property is in the presence of a person if it is so within his reach, observation or control, that he could if not overcome by violence or prevented by fear, retain his possession of it." *United States v. Burns*, 701 F.2d 840, 843 (9th Cir.1983), *cert. denied*, 462 U.S. 1137, 103 S.Ct. 3123, 77 L.Ed.2d 1375 (1983) (internal quotation

marks omitted); *accord United States v. W.T.T.*, 800 F.2d 780, 782 (8th Cir.1986) (quoting *Burns* ); LaFave & Scott, Substantive Criminal Law § 8.11, at 443 (1986) ("property taken in the robbery must be close enough to the victim and sufficiently under his control that, had the latter not been subjected to violence or intimidation by the robber he could have prevented the taking"). The Third Circuit, in *Lake*, accordingly imported into the federal carjacking statute the test for "presence," as formulated in *Burns* and the cited treatise, 150 F.3d at 272, and within a year the Eleventh Circuit had followed suit. *See United States v. Kimble*, 178 F.3d 1163, 1167, 1167–68 (11th Cir.1999) (car must be "close enough for the victims to have prevented its taking had fear or violence not caused them to hesitate").[21]

The *Lake/Kimble* formulation, therefore, does not merely require proximity to the car sufficient for the victim to retain actual physical control over it in the abstract. It also creates a visual image—to be applied to the evidence—that the victim must be close enough that, if nothing violent had stood in the way, the victim would have been able to reach the car in time for a confrontation when the would-be carjacker attempted to take possession.[22]

**20.** 18 U.S.C. § 2119 (1996).

**21.** In construing the reach of "presence," the *Kimble* court elaborated: "Presence ... requires a significant degree of nearness without mandating that the property be within easy touch.... Just as with other types of robbery, the victim's proximity to the property is a predicate of the crime. Under this interpretation, the victim must be sufficiently near to the vehicle for it to be within reach, inspection, or control and, absent threat or intimidation, to be able to maintain control of it. For a car to be within one's reach or control, it must be accessible." 178 F.3d at 1167–68.

**22.** *Lake* and *Kimble* reflect the analysis applied by the U.S. Court of Appeals in the District of Columbia to "immediate actual possession" under the District's robbery statute, namely, that the victim must be close enough to the property to have fought off the thief had the victim not been prevented from doing so. In case of a "stealthy seizure," for example, the court approved an instruction that the property must be within such "reach" of the victim that, if he knew the theft was taking place, "such knowledge would likely result in physical violence or a struggle for possession of the property." *Spencer, supra* note 15, 116 F.2d at 802 (citation omitted). And, in a case of the theft of a dropped

This *Lake/Kimble* formulation has also been adopted by other federal circuits.[23] And, important for our purposes, it is an elaboration wholly consistent with, and supportive of, this court's proximity requirement in *Winstead.* We conclude, accordingly, that the *Lake/Kimble* formulation enhances our understanding of what "close enough" should mean under our local jury instruction and what is within the "range" for sufficiency purposes under the District's carjacking statute.[24]

### E. The Jury's Finding of "Immediate Actual Possession"

■ We turn now to the facts. We have shown that instruction 4.51, without reference to the "force or violence" language in *Winstead,* cannot be found prejudicial to Sutton. Furthermore, we perceive no basis for questioning sufficiency of the evidence of "immediate actual possession" because of a failure to include the federal *Lake/Kimble* refinement in that instruction. In contemplating whether the victim was "close enough to exercise physical control" over his car, the juror who asks, "Close enough to control for what purpose?", is more likely than not to answer intuitively and logically: "close enough to stop the thief." Therefore, absent objection by Sutton, we are not troubled by omission of *Lake/Kimble* language from Instruction 4.51. Accordingly, we undertake our factual analysis by applying the instructional language used by the jury.

■ Too loosely construed, of course, instruction 4.51 could be meaningless, for literally anyone with a car key in the pocket could be said to be "close enough" to "exercise physical control" over a vehicle parked blocks away, even at one's home. But the instruction,[25] in requiring such proximity that one could "reasonably expect the complainant" to exercise physical control over the vehicle, surely means close enough to exercise control *at the time of the alleged taking of the car.* In context, no other meaning would make sense. Thus, a victim's physical control over the key does not in itself suggest that the victim was close enough to the car, wherever located, to trigger the carjacking statute. It follows that, even if one could

---

envelope, the court acknowledged that the property must be "so far under the personal control of the victim that violence or intimidation is necessary to sever his control." *Dixon,* 469 F.2d at 944.

**23.** The "presence" element under 18 U.S.C. § 2119 has been satisfied, for example, when the victim had parked his car and walked approximately fifteen feet away when the assailant demanded the keys at gunpoint and drove away in the car, *United Stated v. Edwards,* 231 F.3d 933 (5th Cir.2000); when the assailant took keys from the victim in a bank and drove her car away from the bank parking lot, *United States v. Moore,* 198 F.3d 793 (10th Cir.1999); when a victim indoors, whose car was parked outside the restaurant where he worked, was robbed of keys then used to steal the car, *United States v. Kimble,* 178 F.3d 1163, 1168 (11th Cir.1999); and even when a victim was robbed of keys that

were then used to steal a car that was up a steep hill, out of sight of the robbery scene, *United States v. Lake,* 150 F.3d 269 (3d Cir. 1998) (Alito, J.); *see also United States v. Savarese,* 385 F.3d 15, 19 (1st Cir.2004) (applying same test to enhancement for carjacking under federal sentencing guidelines); *United States v. Boucha,* 236 F.3d 768, 775 (6th Cir.2001).

**24.** In stating that we enhance this court's understanding of *Winstead* by embracing the *Lake/Kimble* formulation, we are not stating any view on the outcome of particular federal cases. It is always for the trial judge, or for this court on appeal, to determine whether the facts permit a prosecution for carjacking to go to the jury, judging whether the evidence was sufficient to permit a reasonable jury to find "immediate actual possession."

**25.** See *supra* note 9.

say that the assailants, including Sutton, took "a person's motor vehicle" when they stole Cox's car keys (thereby satisfying the fourth element of carjacking), this would not mean that they took the vehicle from Cox's "immediate actual possession." The focus, then, must be on the victim's—Cox's—proximity to the vehicle itself: what was "close enough"?

As noted earlier, we initiate that inquiry in a context new to this court's jurisprudence: uncontradicted evidence demonstrating that Cox, the victim here, had left his parked car for an evening with friends—indeed, he was three car lengths (or roughly forty-five to fifty feet) away from it and intending to walk further—when Sutton and the others accosted him. Sutton accordingly argues that, because Cox had parked the vehicle, intending to leave it unused as he walked to a social gathering some distance away, that scenario indicated an intent to relinquish possession for a while and thus limited the scene—the scope of the assault—to the vicinity of the holdup and robbery of his person after he had left the car. There is nothing in the statute, however, that would serve to constrict the "immediate actual possession" requirement by reference to the victim's intent upon leaving the vehicle. Clearly, the legal test governing a sufficiency inquiry, set forth both in instruction 4.51 and in *Winstead* is an objective one: immediate actual possession is retained if the car is "close enough" or "within such range that the victim *could*"—not would—have retained "actual physical control" over the car. 809 A.2d at 610. (Emphasis added.)

We cannot say as a matter of law that the three car lengths—the forty-five to fifty feet—at issue here, in contrast with the very short distances at issue in *Winstead* and our other decisions, see *supra* note 13, take this case outside the carjacking statute. On the facts of record, and in light of relevant federal case law, see *supra* note 23, we must conclude that the jury reasonably could have found that at the time Sutton's cohort, Wright, drove away in Cox's Spyder, the Spyder was in Cox's "immediate actual possession" because the car was "close enough that one could reasonably expect [Cox] to exercise physical control over it." Instruction 4.51, *supra* note 9. We accordingly can say that, at the time the Spyder was taken, it was "within such range that [Cox] could, if not deterred by violence or fear, [have] retain[ed] actual physical control over it." *Winstead,* 809 A.2d at 610. And, finally, lest there remain any question about what it means to have exercised or retained actual physical control, we are satisfied that, but for the violence against Cox—indeed, a threat of death pending throughout the time period until Wright drove Cox's Spyder away—Cox remained close enough to the vehicle to have "prevented its taking." *Kimble,* 178 F.3d at 1168.[26]

To conclude: the evidence is sufficient for conviction of carjacking; the record supports the jury's finding that the victim, Cox, was in "immediate actual possession" of his vehicle at the time Sutton and the others took it away from him.

### III. The Aiding and Abetting Instruction

██ Sutton contends that, assuming sufficiency of the evidence, he is entitled

---

**26.** Instruction 4.51, see *supra* note 9, would more accurately track the law, and convey it more precisely to the jury, if it were augmented to read as follows: "A motor vehicle is in the immediate actual possession of the complainant if it is located close enough that one could reasonably expect the complainant to exercise physical control over it, *and thereby prevent its taking, if not deterred by violence or fear."*

nonetheless to reversal and remand for a new trial because the aiding and abetting instruction given for carjacking did not satisfy this court's decision in *Wilson–Bey*, 903 A.2d 818. There, we held that the trial court erred when instructing the jury that it could convict the defendant of first-degree murder on an aiding and abetting theory without requiring a finding that he had formed the specific intent to murder required to convict a principal; the instruction had permitted conviction merely if the acts of the principal were "the natural and probable consequences of the crime or criminal venture in which [the defendant] intentionally participated." *Id.* at 826 (italics omitted). In this case, the trial court instructed the jury that it could find Sutton guilty of carjacking, as an aider and abettor, under that same formulation. In short, this instruction authorized conviction based on a negligence standard when conviction of a principal required knowing, or at least reckless, behavior. D.C. Code § 22–2803(a)(1) (2001); *Pixley v. United States*, 692 A.2d 438, 439–40 (D.C.1997).

Citing *Kitt v. United States*, 904 A.2d 348, 356 (D.C.2006), the government contends that the "reasoning and holding" of *Wilson–Bey* is limited to "specific intent crimes." Next, citing *Pixley*, the government argues that carjacking is a "general intent" crime. *Id.* Finally, quoting *Lampkins v. United States*, 973 A.2d 171, 174 (D.C.2009) (per curiam), the government maintains that "this court has not extended its holdings in *Wilson–Bey* and *Kitt* to include general intent crimes." Accordingly, says the government, the trial court did not err in giving the "natural and probable consequences" instruction for aiding and abetting.

After our decision in *Lampkins*, however, this court issued its decision in *Wheeler v. United States*, 977 A.2d 973 (D.C.2009), in which we concluded that "*Wilson–Bey* is not limited to specific intent crimes." *Id.* at 986 n. 34. We relied substantially on *Coleman v. United States*, 948 A.2d 534 (D.C.2008) (vacating conviction for second-degree murder—not a specific intent crime—under "natural and probable consequences" formulation for aiding and abetting), which preceded *Lampkins* in time and thus took precedence under the rule of *M.A.P. v. Ryan, cited in Thomas, supra* note 5. After *Wheeler*, the *Lampkins* division, in an order denying a motion filed by amicus Public Defender Service to withdraw publication—and thus the precedential authority—of *Lampkins*, concluded: "We agree with and accept the position in *Wheeler* that the *Wilson–Bey* ruling is not automatically inapplicable to every general intent crime." *Lampkins*, 973 A.2d at 171 (order denying motion to withdraw publication). In the meantime, the government had filed a petition for rehearing and rehearing en banc in *Wheeler*. That petition was denied by the en banc court but granted by the division that heard the case,[27] in a way that reinforces the *Wheeler* decision.

■ We need not explore the *Wilson–Bey* instructional issue much further, however, for we note that Sutton did not object to the aiding and abetting instruction, and thus on plain error review he cannot prevail. We acknowledge that, if applicable to carjacking, our decision in *Wilson–Bey*, the law at the time of this appeal, would govern and the error would be "plain," even though *Wilson–Bey* was decided after Sutton's trial. *See Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct.

27. *Wheeler v. United States*, Nos. 05–CF–716 & 07–CO–637, 987 A.2d 431, Order on Appellee's Petition for Rehearing, Jan. 4, 2010

(augmenting *Wheeler v. United States*, 977 A.2d 973, 986 n. 34).

1544, 137 L.Ed.2d 718 (1997). However, we cannot say that the error, if any, affected Sutton's "substantial rights" or "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* at 467, 117 S.Ct. 1544 (quoting *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). After all, there is no dispute that, at the outset of the encounter that led to Wright's driving Cox's Spyder away, Sutton knew that Wright was going to do so and held the gun to Cox's head to facilitate that result. On this evidence, therefore, Sutton unquestionably demonstrated the intent—the required knowledge or recklessness—to pursue a carjacking; the jury could not have reasonably perceived his actions as those of a mere aider and abettor, intending no more than the natural and probable consequences of what his cohorts in crime were initiating.

## IV. The Claimed Merger of UUV and RSP

Finally, Sutton contends that his UUV and RSP convictions, based on his taking the Taurus on November 20, should merge. In applying the Fifth Amendment's prohibition against multiple punishments for a single offense, we merge two offenses unless each requires proof of a fact that the other does not. *E.g., Scott v. United States,* 953 A.2d 1082, 1095 (D.C.2008). To convict Sutton of UUV but not RSP, the government had to prove that he had "take[n], used[d], operate[d], or remove[d] or cause[d] to be taken, used, operated, or removed, a motor vehicle." D.C.Code § 22–3215(b) (2001); *see also* § 22–3232 (2001). To obtain conviction for RSP but not for UUV, the government had to prove that Sutton knowingly "b[ought], receive[d], possesse[d], or obtain[ed] control" of stolen

property "with intent to deprive another of the right to use the property or a benefit of the property." D.C.Code § 22–3232(a); *see also* § 22–3215(b). Because each offense contains an element that the other does not, merger is not constitutionally required.

Sutton, however, attempts to rely on *Byrd v. United States,* 598 A.2d 386, 391, 393 (D.C.1991), in which we held that, because D.C.Code § 22–3203(2) (2001) [28] bars consecutive sentences for theft and UUV, and because RSP is at least the "functional equivalent" of theft, consecutive UUV and RSP sentences may not be imposed for the same conduct. Although *Byrd* analyzes constitutional merger requirements, it ultimately turns on interpretation of § 22–3203; thus in any event, under *Byrd,* only consecutive sentences for UUV and RSP are barred. *See Byrd,* 598 A.2d at 394. Because Sutton received concurrent sentences for these two convictions, his *Byrd* argument has no merit.

\* \* \* \* \* \*

For the foregoing reasons, as to all claimed bases for reversal, we find no error. Accordingly, the convictions for carjacking while armed, receiving stolen property, and unauthorized use of a vehicle are affirmed.

*So ordered.*

OBERLY, Associate Judge, concurring.

I join the judgment of the court but write separately to explain my understanding of the "immediate actual possession" element of the carjacking statute. D.C.Code § 22–2803(a)(1) (2001).

The phrase "immediate actual possession" in the carjacking statute is borrowed from the District's robbery statute. *Winstead v. United States,* 809 A.2d 607, 610

**28.** Then § 22–3803 (1981).

n. 3 (D.C.2002) (" 'Whoever by force or violence ... shall take from the person or immediate actual possession of another anything of value, is guilty of robbery.' ") (quoting D.C.Code § 22–2801). The seminal case on the meaning of "immediate actual possession" in the robbery statute, in turn, is *Spencer v. United States,* 116 F.2d 801, 802 (D.C.Cir.1940), which held that "immediate actual possession" refers "at least [to] an area within which the victim could reasonably be expected to exercise some physical control over his property." We have repeatedly treated *Spencer* as authoritative on the meaning of "immediate actual possession." *See Beaner v. United States,* 845 A.2d 525, 533, n. 7 (D.C.2004); *Leak v. United States,* 757 A.2d 739, 743 (D.C.2000); *Rouse v. United States,* 402 A.2d 1218, 1220 (D.C.1979); *see also United States v. Gilliam,* 167 F.3d 628, 640 (D.C.Cir.1999). Therefore, in *Winstead,* we concluded that for the purposes of the carjacking statute, a car is within a victim's immediate actual possession if " 'the car is within such range that the victim could, if not deterred by violence or fear, retain actual physical control over it.' " *Winstead,* 809 A.2d at 610 (quoting *Gilliam,* 167 F.3d at 639–40).

Under this settled law, a rational jury could have found that Cox was in immediate actual possession of his car. It is true that in other cases affirming carjacking

convictions, the victim was closer to his car than Cox was to his Spyder, *see Winstead,* 809 A.2d at 611 (victim was a "few feet" away from his car); *Beaner,* 845 A.2d at 533 (same), or, unlike Cox, had evinced an intent to return to his car. *E.g., Gilliam,* 167 F.3d at 632 ("bank manager ... was opening the bank's parking lot gate so that he could park his car, which was nearby with the driver's door open and the engine running"); *Beaner,* 845 A.2d at 533 (similar). Having said that, nothing in our case law establishes that a person who is more than a few feet away from his car cannot, as a matter of law, be in immediate actual possession of his car. Nor do our decisions require the prosecution to prove that the victim intended to return to his car at the moment he was attacked—indeed, nothing on the face of the carjacking statute requires that the victim even know that his car is being stolen. *Cf. Leak,* 757 A.2d at 742 ("the District of Columbia's statutory definition of robbery includes the stealthy snatching of an item, even if the victim is not actually holding, or otherwise attached to the object, or indeed is unaware of the taking"). In short, a jury easily could have concluded that at a distance of three car lengths, Cox could have regained control over his car had he not been deterred by his gun-wielding assailants. Sutton does not explain why the jury's assessment of the facts was so out of bounds as to warrant reversal.[1]

---

1. Significantly, the federal courts of appeal have affirmed carjacking convictions in cases where the victim's control over his car was far more attenuated than in this case. *E.g., United States v. Lake,* 150 F.3d 269, 271 (3d Cir.1998) (Alito, J.) (affirming conviction where victim was robbed of keys and car was up a steep hill, "out of sight" of where the taking occurred); *United States v. Kimble,* 178 F.3d 1163, 1165 (11th Cir.1999) (affirming conviction where robbers took keys from victim inside restaurant and took victim's car that was parked outside). To be sure, the federal carjacking statute requires that the car be taken from the victim's "person or presence," 18 U.S.C. § 2119, not from the victim's "immediate actual possession." Notwithstanding this difference, the federal cases are persuasive authority because under our case law the phrase "immediate actual possession" has no appreciable difference in meaning from the phrase "person or presence" in the federal cases. *Compare Lake,* 150 F.3d at 271 (under federal carjacking statute, a car "is in the presence of a person if it is so within his reach, observation or control, that he could if not overcome by violence

Although Sutton challenges only the sufficiency of the evidence, the majority also examines—and criticizes—the carjacking instruction's definition of "immediate actual possession," as approved in *Winstead*, 809 A.2d at 610 n. 4. According to the majority, the instruction is flawed because it does not contain the words "violence or fear." It is far from clear to me that the criticism is warranted. The "violence or fear" concept, after all, is present elsewhere in the instruction, albeit not in the definition of "immediate actual possession." Specifically, the instruction says that to commit carjacking, the defendant must "knowingly use[ ] force or violence to take the motor vehicle," explains that "putting the complainant in fear" is sufficient to meet the force-or-violence requirement, and emphasizes that "[t]o establish a carjacking, it is not sufficient that the defendant took the motor vehicle; s/he must have taken it using force or violence." Instruction No. 4.51, "Carjacking," in the CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA (4th ed. 1993). I am not convinced, therefore, that it is necessary or advisable to revise the definition of "immediate actual possession" to also include the words "violence or fear." I doubt that any juror listening to the instruction would fail to appreciate that the government must prove that the victim was deterred by violence or fear from retaining control over his car, and certainly no credible argument can be made in this case that Cox was not so deterred. Even if I shared the majority's doubts about the instruction, however, I would leave resolution of those doubts to a case where the instruction has been challenged and the issue briefed.

or prevented by fear, retain his possession of it") (quotation marks omitted), *with Winstead*, 809 A.2d at 610 (under District carjacking statute, a car is within victim's immediate

With these observations, I concur in the judgment of the court.

actual possession "if the car is within such range that the victim could, if not deterred by violence or fear, retain actual physical control over it") (quotation marks omitted).