

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-21-1998

# United States v. Lake

Precedential or Non-Precedential:

Docket 97-7462

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation
"United States v. Lake" (1998). *1998 Decisions*. Paper 165.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/165

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 21, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7462

UNITED STATES OF AMERICA

v.

HILTON A. LAKE

Hilton A. Lake,

Appellant

ON APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS
(D.C. Criminal No. 96-cr-00161)

Argued March 30, 1998

Before: BECKER, Chief Judge, COWEN, and ALITO,
Circuit Judges

(Opinion Filed: July 21, 1998)

          Thurston T. McKelvin
          Federal Public Defender
          Patricia Schrader-Cooke (Argued)
          Asst. Federal Public Defender
          P.O. Box 3450
          Christiansted, VI 00822
          Attorney for Appellant Hilton Lake

James A. Hurd, Jr.
United States Attorney
Kim L. Chisholm (Argued)
Assistant U.S. Attorney
5500 Veterans Drive, Suite 260
Charlotte Amalie
U.S. Virgin Islands 00802-6424
Attorneys for Appellee

OPINION OF THE COURT

ALITO, Circuit Judge

This is an appeal from a judgment in a criminal case. After a jury trial, the defendant, Hilton A. Lake, was convicted under 18 U.S.C. S 924(c)(1) of using or carrying a firearm during and in relation to a crime of violence, namely, a carjacking (see 18 U.S.C. S 2119). Lake challenges his conviction on numerous grounds, the most substantial of which is that he did not violate the carjacking statute because, he argues, he did not take the motor vehicle in question "from the person or presence" of the victim. We reject this and Lake's other arguments, and we therefore affirm.

I.

The events that led to Lake's prosecution occurred at Little Magen's Bay in St. Thomas, United States Virgin Islands. The road to the beach at Little Magen's Bay ends at the top of a hill. There is a steep path bordered by vegetation and rocks that leads from the road down to the beach, and the road cannot be seen from the beach.

On the day in question, Lake hitchhiked to Little Magen's Bay and encountered Milton Clarke, who was sitting on the beach reading a newspaper. Lake asked whether Clarke owned a white car parked up on the road. Clarke said that he did, and Lake initially walked away. However, Lake returned a few moments later and asked to borrow the car. When Clarke refused, Lake stated that it was an

2

emergency. Clarke again refused, and Lake walked off. When Lake returned yet again, Clarke said:

> [L]isten, think about it. If I walked up to you and asked you, can I borrow your car[,] [a]re you going to lend it to me? Of course not. So why don't you leave me the hell alone. I'm here to have a nice time. Just chill. Go someplace else.

App. 140A.

Lake walked off and sat on a rock, while Clarke anxiously watched him out of the corner of his eye, but Lake soon returned with the same request. When Clarke swore again, Lake asked if he could have a drink from Clarke's cooler. Clarke said: "[D]on't you get it? Leave me alone." App. 141A. Lake then lifted up his shirt, showed Clarke the handle of a gun, and said: "[Y]ou know what that is?" App. 141A. Clarke stood up and started backing away, but Lake pulled the gun from his waist band, put it against Clarke's face, and demanded the car keys. App. 142A. Clarke said that he did not have the keys and started walking toward the water with Lake following. Clarke waded into waist-deep water, and Lake walked out onto a promontory overlooking the water. App. 143A-48A.

While Clarke was in the water, his friend, Pamela Croaker, appeared on the beach. Clarke shouted a warning, prompting Lake to approach Croaker. Lake demanded that Croaker surrender her car keys, and Croaker said:"I don't even know you. Why would I give you the keys to the car?" App. 183A. Lake then grabbed the keys, and the two wrestled for possession of the keys. When Croaker saw the gun, she surrendered the keys but asked to keep her house keys. App. 184A-86A. Lake went up the steep path to the parking area where Croaker had parked her car out of sight of the beach. Lake then drove away in Croaker's car after leaving her house keys on the hood of Clarke's car. App. 192A. As we will discuss later in more detail, both Croaker and Clarke followed him up the path, but when they arrived, he was driving away.

Later that day, the police apprehended Lake in the stolen car at a McDonald's restaurant. When questioned by the police and an FBI agent, Lake stated that he had used a toy

gun and that he had thrown it in a swamp. He refused to take the officers to the site where he had allegedly disposed of the gun, and when asked to tell the truth about whether the gun was really a toy, he responded that he "would think about it." The gun was never recovered.

Lake was indicted for carjacking, in violation of 18 U.S.C. S 2119, and for using and carrying a firearm during and in relation to a crime of violence (the carjacking), in violation of 18 U.S.C. S 924(c)(1). At the close of the evidence in his jury trial, Lake moved unsuccessfully for a judgment of acquittal. The jury subsequently returned a verdict of not guilty of the carjacking charge but guilty of thefirearms offense. Lake was sentenced to imprisonment for 60 months plus a three-year term of supervised release. He then took this appeal.

II.

We will begin with Lake's argument that the evidence was insufficient to support his conviction under 18 U.S.C. S 924(c)(1) because the evidence did not show that he used or carried a "firearm" within the meaning of 18 U.S.C. S 921(a)(3). Lake contends that the evidence failed to establish that the gun was not a toy. Appellant's Br. at 18. Lake notes that he initially told Officer Griffin that the gun was a toy, that Croaker and Clarke both said that the gun looked like the type of gun used by cowboys in Westerns, and that Clarke said that he was not able to tell whether the gun was real. Id.

We recently addressed a similar argument in United States v. Beverly, 99 F.3d 570 (3d Cir. 1996), and under Beverly the evidence here was sufficient. Both Clarke and Croaker stated that Lake had a gun and described it in some detail. See App. 141A-42A, 184A. Lake does not contend that their descriptions were inconsistent with that of a real gun. Both Clarke and Croaker testified that they experienced great fear, App. 151A, 184A, 186A, and Croaker manifested sufficient fear of the gun to surrender her keys. Moreover, although Lake originally told the authorities that the gun was a toy and that he had thrown it in a swamp, he refused to reveal its location, and when

4

later asked whether he would tell the truth about whether the gun was real, Lake responded that he would "think about it." App. 171A-72A. In light of all of this evidence, a rational jury could find that the gun was real.

III.

Lake next argues that the evidence was insufficient to show that he violated the carjacking statute, 18 U.S.C. S 2119, and thus that he committed the predicate offense needed to support his 18 U.S.C. S 924(c)(1) conviction. Under the carjacking statute, 18 U.S.C. S 2119, the prosecution must prove that the defendant (1) "with intent to cause death or serious bodily harm" (2) took a motor vehicle (3) that had been "transported, shipped, or received in interstate or foreign commerce" (4) "from the person or presence of another" (5) "by force and violence or by intimidation." Lake contends that the evidence in this case was insufficient to prove elements one, three, and four. In reviewing the sufficiency of the evidence, we must decide whether the jury could have rationally found that each of the challenged elements had been established beyond a reasonable doubt. United States v. Carr, 25 F.3d 1194, 1201 (3d Cir. 1994).

A. Intent to cause death or serious bodily injury. We see no merit in Lake's contention that the evidence was insufficient to show that he intended to cause death or serious bodily injury. As previously discussed, the evidence was sufficient to show that Lake's gun was real. In addition, the car jacking victim, Pamela Croaker, testified that Lake waved the gun in front of her and ordered her to give him the keys to her car. App. 184A. When she hesitated, she testified, Lake placed the gun close to her head and again told her to surrender the keys. App. 185A. Based on this testimony, a rational jury could find that Lake had the intent to kill or cause serious bodily injury to Croaker if she did not comply with his demands, and we have previously held that such a conditional intent is sufficient to satisfy the carjacking statute. United States v. Anderson, 108 F.3d 478, 481-85 (3d Cir.), cert. denied, 118 S. Ct. 123 (1997).

5

In arguing that the proof of intent was insufficient, Lake notes, among other things, that he "asked for Clarke's keys several times before he displayed the gun and placed it against Clarke's face" and that he initially asked for Croaker's keys and wrestled with her before pulling the gun on her. Appellant's Br. at 16. We agree that these facts suggest that Lake was at least reluctant to fire his gun, but we do not agree that a rational jury was compelled to infer that Lake would not have fired the gun in the end if Croaker had not given up the keys. On the contrary, we hold that the evidence amply supported the jury's finding that Lake possessed the requisite conditional intent to cause death or serious bodily injury.

B. From the person or presence of another.  Lake maintains that the evidence did not show that he took Croaker's car "from [her] person or presence," as 18 U.S.C. S 2119 demands. Lake argues that he took her keys, not her car, from her person or presence and that the car was not in Croaker's presence when he took it because she could not see or touch the car at that moment.

The carjacking statute's requirement that the vehicle be taken "from the person or presence of the victim" "tracks the language used in other federal robbery statutes," H.R. Rep. No. 102-851 (I), at 5 (1992), reprinted in 1992 U.S.C.C.A.N. 2829, 2834, such as 18 U.S.C. SS 2111, 2113, and 2118. See United States v. Perez-Garcia, 56 F.3d 1, 3 (3d Cir. 1995). Under these statutes, "property is in the presence of a person if it is `so within his reach, observation or control, that he could if not overcome by violence or prevented by fear, retain his possession of it.' " United States v. Burns, 701 F.2d 840, 843 (9th Cir. 1983). See also United States v. W.T.T., 800 F.2d 780, 782 (8th Cir. 1986); LaFave and Scott, Substantive Criminal Law S 8.11 at 443 (1986) (" `Presence' in this connection is not so much a matter of eyesight as it is one of proximity and control: the property taken in the robbery must be close enough to the victim and sufficiently under his control that, had the latter not been subjected to violence or intimidation by the robber, he could have prevented the taking").

Here, as previously described, Lake took Croaker's car keys at gunpoint on the beach and then ran up the path

and drove away in her car. Croaker pursued Lake but did not reach the parking area in time to stop him. Applying the definition of "presence" noted above, we conclude that a rational jury could have found that Croaker could have prevented the taking of her car if she had not been fearful that Lake would shoot or otherwise harm her. Croaker testified that the sight of Lake's gun caused her great fear. She stated that when she first saw the gun she "felt like [she] was going to let go of [her] bowels [and] faint." App. 184A. Although Croaker did not say in so many words that she hesitated for some time before pursuing Lake up the path, the sequence of events laid out in her testimony supports the inference that this is what occurred. Croaker stated that at the point when she surrendered the keys, Clarke "was struggling back through the water to come back," App. 185A, but that she did not start to run up the path until Clarke emerged from the water. App. 186A. Clarke testified that, when Lake ran up the path, Croaker was "pulling herself together kind of." App. 150A. Clarke related that he "caught up to [Croaker] at the bottom of the paved driveway" and that the two of them proceeded up the path together. App. 150A. They reached the parking area in time for Croaker to see Lake driving away in her car but not in time to stop him. App. 186A. Both Croaker and Clarke stated that at this point they were very scared. App. 151A, 186A. Based on this testimony, a rational jury could infer that Croaker hesitated before pursuing Lake due to fear and that if she had not hesitated she could have reached the parking area in time to prevent Lake from taking her car without employing further force, violence, or intimidation. We do not suggest this inference was compelled, but because such an inference was rational, we hold that the evidence was sufficient.

C. Interstate or foreign commerce. Lake al so contends that the evidence was not sufficient to show that Croaker's car had been transported in interstate or foreign commerce. The prosecution sought to establish this element based on testimony by police officer Curtis Griffin, a life-long resident of the Virgin Islands, that no motor vehicles are manufactured in the Virgin Islands and that all motor vehicles have to be shipped to the islands. App. 194A–195A. Lake argues, however, that "Griffin was not qualified to

7

testify regarding this element simply because he was a life long resident of the Virgin Islands" and that "[n]o foundation was laid for this testimony." Appellant's Br. at 19. We reject this argument. Under Fed. R. Evid. 602, Officer Griffin's testimony was proper if there was sufficient evidence "to support a finding that [he had] personal knowledge of the matter." This foundation may be "furnished by the testimony of the witness himself." Fed R. Evid. 602 Advisory Committee Note on the 1972 Proposed Rules. "The district court exercises its discretion in determining whether the proponent of the evidence has met [this] burden." 3 Weinstein's Federal Evidence S 602.03 [1][b] at 602-11 (2d Ed. 1998).

There was no abuse of discretion here. We take judicial notice of the fact that the United States Virgin Islands consist of three main islands, which are closely grouped and have an area of only 136 square miles. Times Atlas of the World 33 (1995). A police officer and lifelong resident of a place of this type has a sufficient basis to testify as to whether any motor vehicle manufacturing facilities are located there. We therefore conclude that the prosecution adequately proved, as 18 U.S.C. S 2119 requires, that the motor vehicle in question had been transported in interstate or foreign commerce.1

In sum, we hold that the evidence was sufficient to establish all of the elements of the car jacking statute.

IV.

We reject Lake's contention that the district court committed reversible error in instructing the jury with respect to the 18 U.S.C. S 924(c)(1) charge because the

_____

1. Lake has not raised the question whether Congress possessed the authority under the Commerce Clause to enact the federal carjacking statute. See United States v. Oliver, 60 F.3d 547, 549-50 (9th Cir. 1995)(statute constitutional), cert. granted sub nom. Jones v. United States, 118 S. Ct. 1359 (1998), order granting cert. amended, 118 S. Ct. 1405 (1998)(limiting questions presented); United States v. Bishop, 66 F.3d 569 (3d Cir. 1995)(statute constitutional), cert. denied, 116 S. Ct. 681, 750 (1996); id. at 590-91 (statute unconstitutional)(Becker, J., dissenting).

court did not at that point reiterate all of the elements of the predicate carjacking offense. The district court set out all of the elements of the car jacking offense when it instructed the jury on the carjacking count (count I) of the indictment. When the court later turned to the firearms charge, the court told the jury that this offense required proof that Lake "committed the crime of carjacking as charged in the indictment in Count I." App. 351A. This instruction was accurate, and although the court refused to give Lake's requested instruction reiterating all of the elements of the carjacking offense, the court's refusal clearly does not justify reversal. A trial judge's refusal to give an instruction requires reversal only when the requested instruction "was correct, not substantially covered by the instructions given, and was so consequential that the refusal to give the instruction was prejudicial to the defendant." United States v. Phillips, 959 F.2d 1187, 1191 (3d Cir. 1992). Here, the requested instruction was substantially covered elsewhere in the instructions, and we perceive little risk of prejudice to the defendant from the trial court's refusal to reiterate the elements of carjacking.

V.

Lake argues that the district court erred in sentencing him under 18 U.S.C. 924(c)(1) for using or carrying a firearm during a carjacking since he was acquitted on count I of the indictment, which charged him with the carjacking. In making this argument, Lake relies on Government of the Virgin Islands v. Edwards, 750 F.2d 23 (3d Cir. 1984), which in turn relied on Government of the Virgin Islands v. Charles, 590 F.2d 82 (3d Cir. 1979). Both Edwards and Charles concerned a Virgin Islands statute, 14 V.I.C. S 2251(a)(2), which provides in pertinent part as follows:

Whoever--

(1) with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, stiletto, or any other dangerous or deadly weapon shall--

9

> (A) be fined not more than $1,000 or imprisoned not more than two (2) years, or both; or
>
> (B) if he has previously been convicted of a felony, or has, possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence (as defined in section 2253(d)(1) hereof) shall be fined not more than $2,000 or imprisoned not more than five (5) years, or both, which penalty shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence.

In Charles, our court held that the defendant could not be sentenced under subsection (B) of this statute because he had not been convicted of any offense that qualified as a "crime of violence" under the statutory definition. In Edwards, our court again held that the defendant, who had not been convicted of a crime of violence, could not be sentenced under subsection (B). Although the trial judge made "specific findings that [the defendant] possessed the weapon during the commission of a crime of violence," our court wrote that "those findings cannot act as a substitute for the jury's conviction of defendant of a crime of violence." 750 F.2d at 24-25. We also "deem[ed] it significant" that the instruction on the 14 V.I.C. S 2251(a)(2) charge merely required the jury to find that the defendant possessed a dangerous knife with the purpose of using it unlawfully against the victim and did not require the jury to find, as 14 V.I.C. S 2251(a)(2)(B) demanded, that he possessed the weapon during the commission of a crime of violence. Id. at 25. In a footnote, the court observed that it "express[ed] no opinion on whether or under what circumstances any conviction of S 2251(a)(2) could be subject to enhancement under S 2251(a)(2)(B) if there were no predicate conviction for a crime of violence." 750 F.2d at 25 n.1.

Because Charles and Edwards involved a different statute, we do not believe that they support Lake's argument here. The federal statute at issue in this case, 18 U.S.C. S 924(c)(4), is not a sentencing enhancement provision but sets out an independent criminal offense. United States v. Nelson, 27 F.3d 199, 200 (6th Cir. 1994). See also United States v. Jenkins, 90 F.3d 814, 821 (3d Cir.

10

1996). In a prosecution under this provision, the government must prove that the defendant committed a qualifying predicate offense, see Jenkins, 90 F.3d at 821, but it is not necessary that the defendant be separately charged with or convicted of such an offense. Nelson, 27 F.3d at 200; United States v. Wilson, 884 F.2d 174, 176 (5th Cir. 1989); United States v. Hill, 971 F.2d 1461, 1464 (10th Cir. 1992); United States v. Ospina, 18 F.3d 1332, 1336 (6th Cir. 1994); United States v. Wilkins, 911 F.2d 337, 338 n.1 (9th Cir. 1990); United States v. Robertson, 901 F.2d 733, 734 (9th Cir. 1990); United States v. Munoz-Fabela, 896 F.2d 908, 911 (5th Cir. 1990); United States v. Hunter, 887 F.2d 1001, 1003 (9th Cir. 1989). Although Charles and Edwards apparently stand for the proposition that a defendant either always or generally must be separately convicted of a crime of violence in order to be sentenced under 14 V.I.C. S 2251(a)(2)(B), we see no basis for importing that rule into a case involving an entirely different, federal statute.

VI.

Lake's final argument is that he was entitled to a new trial or to the suppression of the testimony regarding his statement to the police because rough notes taken by a detective during Lake's interview were not preserved after the interview was reduced to writing by an FBI agent. We have admonished government agents to preserve rough notes of interviews with prospective trial witnesses, but we have also held that if the destroyed notes do not contain "Brady"[2] or Jencks Act, 18 U.S.C. S 2500, material and were discarded in good faith, retrial is unnecessary even if the testimony of the officer who took the notes is not stricken. United States v. Ramos, 27 F.3d 65, 72 (3d Cir. 1994). Under Ramos, we see no ground for reversal here.

VII.

For these reasons, we affirm the judgment of the district court.
_____

2. Brady v. Maryland, 373 U.S. 83 (1963).

BECKER, Chief Judge, dissenting.

When the defendant took the car keys from his victim, Pamela Croaker, Ms. Croaker's car was, in city terms, a block away, up the hill, out of sight. Under these circumstances, I would join an opinion upholding Lake's conviction for "keyjacking," or for both key robbery and grand larceny. I cannot, however, agree that he is guilty of carjacking. The majority draws upon federal robbery statutes to explicate how the vehicle (as opposed to its keys) may be considered to have been taken from the "person or presence of the victim." Disciples of the jurisprudence of pure reason may, in analytic terms, find this approach convincing. As I will explain below, I do not. At all events, my polestar is the plain meaning of words, and in my lexicon, Ms. Croaker's car cannot fairly be said to have been taken from her person or presence, hence I respectfully dissent.

The robbery statutes upon which the carjacking statute is based do not themselves define the phrase "from the person or presence of the victim." Webster's New International Dictionary defines presence as "the vicinity of, or area immediately near one." However, rather than relying on the plain meaning, the majority turns to a construction of the phrase "person or presence" adopted by the Ninth Circuit in United States v. Burns, 701 F.2d 840 (9th Cir. 1983), where, in construing a federal robbery statute, that court reasoned that "property is in the presence of a person if it is `so within his reach, inspection, observation or control, that he could if not overcome by violence or prevented by fear, retain his possession of it." Id. at 843. Based on this definition, the majority concludes that a rational jury "could infer that Croaker hesitated before pursuing Lake due to fear and that if she had not hesitated she could have reached the parking area in time to prevent Lake from taking her car without employing further force, violence, or intimidation." Maj. Op. at 7. This proves too much. If it is true that had Croaker not hesitated out of fear she could have followed Lake up the steep path leading from the secluded beach to the road, then it is equally true (barring physical limitations) that she could have followed him up that path and then halfway across St. Thomas. The

12

fact that Croaker's car was nearby is thus not relevant; if she could have followed Lake up the hill, she could have followed him anywhere. I am aware, of course, that the craft of judging requires line-drawing, but I simply do not see how that endeavor can be principled when it is predicated on open-ended definitions of key statutory terms, especially where those terms admit of plain meaning.

The majority's reliance on a car robbery case to show that the evidence was sufficient to convict Lake of carjacking is of particular interest to me since, coupled with the typical fact pattern in federal carjacking cases, it strengthens my view that my dissent in United States v. Bishop, 66 F.3d. 569 (3d. Cir. 1995), was correct when it reasoned that the federal carjacking statute should be declared unconstitutional under the authority of United States v. Lopez, 514 U.S. 549 (1995). The principal basis on which the Bishop majority found the carjacking statute to be a valid exercise of the interstate commerce power was the belief that carjacking is an adjunct of the interstate business of auto theft, in which the stolen vehicle is destined for a "chop shop." The majority adverted to references in the legislative history labeling carjacking as part of an economic enterprise in which profit is derived from the resale of stolen vehicles or their parts.1 In contrast, almost every carjacking case that I have seen or read about in the last several years -- and there have been many -- is a violent robbery in which the perpetrator has not even the remotest connection to a car theft ring or a chop shop.2 The "effect on interstate commerce"

_____

1. Other courts of appeals have cited as additional bases for concluding that S 2119 is within Congress' power to regulate commerce that automobiles are instrumentalities of interstate commerce and that the statute has a "jurisdictional hook" (i.e., that it only applies to the forcible
taking of a car "that has been transported, shipped, or received in interstate or foreign commerce."). See e.g., United States v. Romero, 122 F.3d. 1334 (10th Cir. 1997); United States v. McHenry, 97 F.3d. 125 (6th Cir. 1996); United States v. Oliver, 60 F.3d. 547 (9th Cir. 1995), aff'd on
resentencing, 116 F.3d. 1487 (9th Cir. 1997), cert. granted sub nom., Jones v. United States, 118 S. Ct. 1405 (1998). For the reasons set out in my dissent in Bishop, I find these justifications unconvincing.

2. Indeed, the facts of the instant case are amongst the least egregious that I have seen where carjacking is alleged. That is probably because, as I have explained, this case does not involve a carjacking nor, for that matter, a car robbery.

underpinning of the carjacking statute is thus a chimera, and I hope that the Supreme Court will take up this issue before too long.3

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

3. In my view, carjacking cases are local crimes which belong in state courts not federal courts. See Judicial Conference of the United States, Long Range Plan for the Federal Courts 24 (Dec. 1995) (Congress should be encouraged to allocate criminal jurisdiction to the federal courts only in limited situations; such a situation is not present where criminal activity has "some minor connection with and effect on interstate commerce". ).