NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1902

_____

UNITED STATES OF AMERICA

v.

CORY D. FOSTER,
                              Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cr-00485-001)
District Judge:  Hon. Mark A. Kearney

_____

ARGUED
March 13, 2018

Before:  JORDAN, SHWARTZ, and KRAUSE, *Circuit Judges*

(Opinion Filed:  May 23, 2018)

_____

Karl D. Schwartz   [ARGUED]
P.O. Box 8846
Elkins Park, PA 19027
        *Counsel for Appellant*

Louis D. Lappen
Robert A. Zauzmer
Eric B. Henson   [ARGUED]
Office of the United States Attorney
615 Chestnut Street – Ste. 1250
Philadelphia, PA 19106
        *Counsel for Appellee*

————————

OPINION\*

————————

JORDAN, *Circuit Judge*.

Cory Foster appeals from federal robbery, carjacking, and firearm offense convictions. Because we agree with the District Court that any trial errors were harmless and that Foster was appropriately sentenced under the Armed Career Criminal Act (the "ACCA"), we will affirm.

## I.    BACKGROUND

Over a three-week period in late 2014, Foster and an accomplice robbed three gas station convenience stores at gunpoint. They used a similar modus operandi during each robbery. First, they would enter the store at night wearing masks and gloves, with Foster carrying a gun. Second, Foster and his accomplice would force the employee working the cash register to open it. [Third, they would usher the employee into a back room, force the employee to turn over personal valuables, and kick, punch, or confine the employee. Last, Foster and his accomplice would steal cigarettes and the cash from the register before departing.

During the third robbery, Foster and his accomplice made off with more than cash and cigarettes – they also stole a car. As the robbery was underway, a customer named David Borkowski entered the store to find Foster pointing a gun at him. Foster and his

———————————

\* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

accomplice forced Borkowski into a back room and bound his hands and feet. They asked Borkowski for his wallet, and he replied that it was in his car. Foster or his accomplice then asked for Borkowski's keys. Borkowski replied that he left them in the ignition. Foster then stole Borkowski's silver Honda Accord and his accomplice drove off in a blue Chrysler Concorde.

Foster was arrested in Delaware on February 6, 2015, as a result of police following a tip that the stolen Accord had been observed at the Branmar Plaza Shopping Center in Wilmington. During the course of that arrest, State Troopers observed a handgun fall out of his left hand.[1] When they searched Foster, they confiscated keys to the stolen car, gloves, and a black knit cap. A search of the stolen car revealed more gloves, multiple rolls of duct tape, a lighter, a backpack, and Borkowski's wallet.

Foster was indicted in the United States District Court for the Eastern District of Pennsylvania and charged with three counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a); one count of carjacking in violation of 18 U.S.C. § 2119; and four counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1).[2]

At trial, the government's case-in-chief relied on cell phone location data, items recovered during and after Foster's arrest, a description of the getaway cars used by

---

[1] Foster was separately charged and convicted in the United States District Court for the District of Delaware for unlawful firearm possession by a felon. He has challenged his conviction and sentence in that case in a separate appeal. *See United States v. Foster*, No. 16-3650 (3d Cir.).

[2] Foster was also charged under 18 U.S.C. § 2 with aiding and abetting one of the firearm charges, all three robbery charges, and the carjacking charge.

Foster and his accomplice, surveillance footage from each convenience store, and testimony by eyewitnesses and investigating officers. The cell phone location data showed that Foster's cell phone was within the vicinity of each robbery at the time each took place. The handgun that the state troopers recovered during Foster's arrest in Delaware was shown to the four victims, and each testified that it resembled – at least in size and color – the gun used during the three robberies. Borkowski testified that neither the handgun, rolls of duct tape, nor gloves were in his car before Foster stole it. As to the getaway car used in at least one of the robberies, an officer testified that the dark blue Chrysler Concorde belonged to Foster's sister. That same car was driven by Foster when he arrived at the third robbery to case the location hours before the robbery occurred.

Eyewitnesses and three investigating officers narrated the surveillance footage of each robbery as it was shown to the jury. The eyewitnesses – the three convenience store employees and Borkowski – testified to the similar physical characteristics possessed by the taller, handgun-wielding perpetrator present at each robbery. While narrating the video, one witness began to opine about the robber's state of mind. Foster objected, prompting the following response from the Court: "Sustained, Sir. You can't – sustained. Strike the question. You don't know what the defendant is thinking. Or excuse me, you don't know what anyone is thinking in the video other than yourself. Strike my reference to any person." (App. at 85.)

As the surveillance footage was shown to the jury, the three investigating officers explained that the robbers used similar tactics during each robbery and observed that the gun-wielding robber depicted in each video possessed the same size and build, a

4

distinctive nose and similar gait, and wore similar clothing. Two officers who had viewed all three videos identified the gun-wielding robber as Foster. The third officer, who had viewed only videos from two of the robberies, concluded that it was the same individual in both videos. Foster objected to each officer's testimony. The Court responded to one such objection by stating, "Overruled. Lay opinion, testimony credible. Overruled." (App. at 101.)

Foster's sister and his probation officer also testified as to the similarity, or lack thereof, between the gun-wielding perpetrator in the surveillance footage and Foster. His probation officer affirmatively identified Foster as the gun-wielding perpetrator, pointing to similarities between the robber and Foster's skin tone, wide nose, unique gait, height, and weight. Foster's sister, in contrast, testified that the person in the videos was not her brother because that person had a different "physique." (App. at 154.) She nevertheless acknowledged that, in at least one of the videos, the robber shared some physical characteristics with her brother.

The jury convicted Foster on all counts. Before sentencing, Foster filed a motion to dismiss the four firearm counts, arguing that Hobbs Act robbery and carjacking are not crimes of violence under 18 U.S.C. § 924(c)(3)(A).[3] The District Court denied the

---

[3] Section 924(c)(1)(A) is a substantive offense that imposes strict mandatory minimum sentences on "any person who, during and in relation to any crime of violence …, uses or carries a firearm[.]" 18 U.S.C. § 924(c)(1)(A). It defines a "crime of violence," in relevant part, as "an offense that is a felony and … has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" *Id.* § 924(c)(3)(A). That subsection is not to be confused with § 924(e), which is purely a sentence-enhancing provision.

5

motion because it determined that both types of offenses qualified as crimes of violence under § 924(c). The Court sentenced Foster to a 714-month term of imprisonment, ordered him to pay $10,890 in restitution, and imposed a $700 special assessment.[4]

Foster appeals his conviction. He challenges the District Court's admission of the officers' video narration testimony, certain comments by the District Court, and the sufficiency of the evidence supporting his carjacking conviction.[5]

## II.    DISCUSSION[6]

### A.    The District Court's Erroneous Admission of Law Enforcement Officer Testimony Was Harmless.

Under Federal Rule of Evidence 701, a lay witness offering opinion testimony must limit his testimony to that which is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the

---

[4] At sentencing, the government agreed to withdraw one of the firearm counts to lessen Foster's statutory sentence. Including that additional count would have raised the mandatory minimum by twenty-five years.

[5] Foster also challenges the District Court's determination that Hobbs Act robbery and carjacking are crimes of violence under § 924(c) of the ACCA. But he concedes that our decision in *United States v. Robinson*, 844 F.3d 137 (3d Cir. 2016), establishes that his Hobbs Act robbery conviction, and by the same reasoning, his carjacking conviction, can serve as predicate offenses for purposes of his § 924(c) convictions because he was contemporaneously convicted of a firearm offense. We agree and note that Foster has raised that issue only for issue preservation purposes. As such, we will not address it any further. Because Foster concedes that *Robinson* forecloses his § 924(c) challenge, we also decline to address his argument that the "residual clause" of § 924(c)(3)(B) is void for vagueness.

[6] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

scope of Rule 702." Fed. R. Evid. 701. An opinion only qualifies as helpful under Rule 701(b) "if it aids or clarifies an issue that the jury would not otherwise be as competent to understand." *United States v. Fulton*, 837 F.3d 281, 292 (3d Cir. 2016) (quoting *Lauria v. Nat'l R.R. Passenger Corp.*, 145 F.3d 593, 600 (3d Cir. 1998)). The government here concedes Rule 701 error under our holding in *United States v. Fulton*, agreeing that the officers' video narration testimony opining on shared physical characteristics between Foster and the perpetrators was improper. *See id.* at 298-300 (holding officers' video narration testimony comparing the defendant to the subjects on a surveillance video unhelpful when the officers lacked sufficient familiarity with the defendants before trial). Thus, our inquiry turns on whether the District Court's *Fulton* error was harmless.

Harmless error is "[a]ny error, defect, irregularity, or variance that does not affect substantial rights[.]" Fed. R. Crim. P. 52(a). We have said that an erroneous "evidentiary ruling is harmless when it is highly probable that the error did not affect the result." *United States v. Duka*, 671 F.3d 329, 349 (3d Cir. 2011) (alterations and internal quotation marks omitted) (quoting *United States v. Friedman*, 658 F.3d 342, 352 (3d Cir. 2011)). "High probability means that we have a sure conviction that the error did not prejudice the defendants." *Id.* (quoting *United States v. Casseus*, 282 F.3d 253, 256 (3d Cir. 2002)). "We may not simply conclude that it is more likely than not that the error was harmless. On the other hand, we may be firmly convinced that the error was harmless without disproving every 'reasonable possibility' of prejudice." *United States v. Mathis*, 264 F.3d 321, 342 (3d Cir. 2001) (quoting *United States v. Jannotti*, 729 F.2d 213, 220 n.2 (3d Cir. 1984)). "The burden of demonstrating such high probability lies

7

with the government." *Id.* at 342. In making that determination, we consider the error contextually within "the record as a whole." *United States v. Stadtmauer*, 620 F.3d 238, 266 (3d Cir. 2010) (quoting *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995)).

Here, given the overwhelming evidence at trial implicating Foster in each crime, we have a sure conviction that Foster was not prejudiced by the *Fulton* error. Foster's probation officer positively identified Foster as the gun-wielding robber; cell phone records placed Foster in proximity to the robberies at the time they occurred; and when finally caught after evading arrest, Foster possessed Borkowski's car, Borkowski's wallet, a handgun, and various items commonly used when perpetrating a robbery. Moreover, evidence established that Foster drove his sister's car to case the third convenience store hours before the robbery occurred, and police had observed that car in close proximity to the first robbed convenience store. That car also matched the physical description of the getaway car used by Foster's accomplice during the third robbery. In light of that evidence, the District Court's admission of the officers' identification testimony was harmless.[7]

---

[7] Despite our determination that the error was harmless under the circumstances of this case, we underscore the *Fulton* error and trust that the government will not introduce similar law enforcement officer testimony in future criminal trials.

**B.    The District Court's Remarks Were Not Reversible Error.**[8]

We evaluate a district court's allegedly prejudicial remarks for undue influence on the jury. *United States v. Stevenson*, 832 F.3d 412, 430 (3d Cir. 2016); *United States v. Olgin*, 745 F.2d 263, 268-69 (3d Cir. 1984). To determine whether a judge's comments unduly influenced a jury, we apply a "four-factor 'sliding scale' test," *Stevenson*, 832 F.3d at 430 (citation omitted), which considers "the materiality of the comment, its emphatic or overbearing nature, the efficacy of any curative instruction, and the prejudicial effect of the comment in light of the jury instruction as a whole," *Olgin*, 745 F.2d at 268-69.

Foster challenges two remarks made at trial. The first is a remark made by the Court after ruling on an objection to an eyewitness's testimony: "Sustained, Sir. You can't -- sustained. Strike the question. You don't know what the defendant is thinking. Or excuse me, you don't know what anyone is thinking in the video other than yourself. Strike my reference to any person." (App. at 85.) Foster argues that comment was prejudicial because the jury could have construed the Court's remark as identifying

---

[8] Because Foster challenges the District Court's alleged misstatements for the first time on appeal, we review for plain error. *United States v. Stevenson*, 832 F.3d 412, 430 (3d Cir. 2016). Under plain error review, an appellate court can correct an error not raised at trial where (1) the district court erred; (2) the error was clear or obvious; and (3) the "error 'affected the appellant's substantial rights,'" which typically means that there is a reasonable probability that the error affected the outcome of the proceedings. *United States v. Stinson*, 734 F.3d 180, 184 (3d Cir. 2013) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). If those three conditions are met, we then have discretion to remedy the error, and we exercise this discretion "only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Puckett*, 556 U.S. at 135 (alteration omitted)).

Foster as one of the perpetrators. Foster contends that, given its materiality and emphasis, no curative instruction could have fully ameliorated the remark's prejudicial effect. We disagree.

The District Court's remark did not unduly influence the jury because the mistaken comment was immediately addressed by the District Court's curative instruction – "strike my reference to any person" – and by the jury instructions read as a whole. (App. at 85.) Indeed, the jury instructions repeatedly told the jury to disregard any comments the Court may have made during trial and emphasized to the jury its unique role as the factfinder. *See United States v. Gaines*, 450 F.2d 186, 190 (3d Cir. 1971) (no undue influence where trial judge informed the jury six times during charge that it had to make the ultimate adjudication in the case). Accordingly, the District Court's use of the phrase "the defendant" cannot fairly be seen as an undue influence on the jury, and Foster has not shown plain error.

The second remark Foster takes issue with is the District Court's response to one of his evidentiary objections to a law enforcement officer's testimony. The Court stated, "Overruled. Lay opinion, testimony credible. Overruled." (App. at 101.)

Again, the District Court's remark was not an undue influence on the jury. To the extent Foster argues that the comment was material or emphatic because it vouched for the officer's credibility, the context shows otherwise. The discussion demonstrates that the District Court simply chose the wrong word – "credible" rather than "admissible" – when attempting to explain why the officer's testimony was allowed. *See Stevenson*, 832 F.3d at 430 (finding no undue influence because "the context of the exchange"

10

demonstrated that the court did not vouch for a witness); *Olgin*, 745 F.2d at 269

(explaining that a comment is material if it refers to a matter "central to the defense" and

emphatic if "a jury may accept [it] as controlling" (citation omitted)).

Even if the comment had raised the specter of prejudice for lack of an immediate

cure, the Court's thorough charge reminded the jurors of their roles as final arbiters of

credibility. *See Stevenson*, 832 F.3d at 431 (explaining that if a comment crossed the line

"any error would have been ameliorated by the judge's thorough instructions").

Accordingly, Foster cannot demonstrate that the Court's use of the word "credible"

unduly influenced the jury and, as a result, he has not shown plain error.

## C.      There Was Sufficient Evidence to Conclude That Foster Committed Carjacking.

As to the carjacking count of conviction, we review Foster's sufficiency of the

evidence claim for plain error because he failed to challenge the sufficiency of the

evidence or move for a judgment of acquittal in the District Court.[9]  *United States v.*

*Burnett*, 773 F.3d 122, 135 (3d Cir. 2014).  Plain error requires us to review "only for a

manifest miscarriage of justice—the record must be devoid of evidence of guilt or the

evidence must be so tenuous that a conviction is shocking."  *Id.* (quoting *United States v.*

*Avants*, 367 F.3d 433, 449 (5th Cir. 2004)).  "Such an error requires a defendant to

establish that the trial judge and prosecutor were derelict in even permitting the jury to

deliberate."  *Id.*

---

[9] The standard of review for plain error is set forth *supra*, n.8.

In evaluating a sufficiency of the evidence claim, we view "the evidence in the light most favorable to the prosecution, [and determine whether] *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in *Jackson*, 443 U.S. at 319)). We "must be ever vigilant ... not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." *Id.* (quoting *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc)).

A conviction for carjacking under 18 U.S.C. § 2119 requires the government to prove "that the defendant (1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation." *United States v. Applewhaite*, 195 F.3d 679, 685 (3d Cir. 1999) (quoting *United States v. Lake*, 150 F.3d 269, 272 (3d Cir. 1998)). The intent described in element (1) requires a "nexus between the assault and the taking [of the car]." *Id.*

Here, Foster argues that the evidence did not show a nexus between the robbers' assault on Borkowski and the subsequent taking of his car because "Borkowski felt threatened, and only offered the robbers his car to placate them and hasten their departure[.]" (Opening Br. at 47-48.) That argument certainly does not meet the high bar of plain error review. When viewed in the light most favorable to the government, Borkowski's testimony establishes the nexus *Applewhaite* requires: the perpetrators asked

12

Borkowski for his keys while wielding a handgun and after binding his hands and feet.

That testimony alone is sufficient to sustain Foster's carjacking conviction.

## III.  CONCLUSION

For the foregoing reasons, we will affirm the judgment of conviction.