**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2955
_____

UNITED STATES OF AMERICA

v.

KEENAN RIGHTER,
                             Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:23-cr-00181-002)
District Judge: Honorable Mitchell S. Goldberg
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 18, 2025

Before: RESTREPO, McKEE, and SMITH, *Circuit Judges*

(Filed: December 19, 2025)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Appellant Keenan Righter was convicted at trial of conspiracy to commit carjacking, carjacking, and using and carrying a firearm during and in relation to a crime of violence. He appeals his judgment of conviction. For the following reasons, we will affirm.

**I**

Righter's appeal arises from two carjacking incidents that occurred in January 2023 at Wawa convenience stores in Delaware County, Pennsylvania.[1]

The Government alleged that on January 14, Righter, Jamar Miller, and a third associate drove to a Wawa parking lot in a white Chevrolet Malibu. Two of the men—donning masks and carrying guns—approached Gaurav Arora as he entered his Mercedes SUV. One of the gunmen struck Arora on the head with what Arora believed was a pistol. Arora "wrestled with the gun," and one of the gunmen threatened to shoot him if he did not drop it. Appx. 147. Arora dropped everything, including his own car keys, and ran back into the store. The Malibu fled the scene first. Both gunmen fled in Arora's Mercedes, which police recovered later that evening.

A similar incident occurred on January 24. According to the Government, Righter, Miller, and their associate drove the white Malibu to the parking lot of a different Wawa store and approached Eric Singleton as he walked to his Lexus sedan. One of the men approached Singleton from the front carrying a gun with an extended

---

[1] Because we write principally for the parties, we recount only the facts and procedural history that are necessary for this discussion.

magazine; another grabbed Singleton's keys from his pocket and struck him on the back of his head with the butt of a gun. From the ground, Singleton heard the perpetrators drive away in his Lexus. Police recovered the vehicle three hours later.

Righter was charged with one count of conspiracy to commit carjacking in violation of 18 U.S.C. § 371 (Count One); two counts of carjacking and aiding and abetting in violation of 18 U.S.C. §§ 2119 and 2 (Counts Two and Four); and two counts of using and carrying a firearm during and in relation to a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Counts Three and Five).

Before trial, the District Court denied Righter's motion to preclude a March 29, 2023 video call between Righter and Jasir Henry, who was incarcerated at the time, that showed Righter holding a gun with an extended magazine. Righter renewed the motion at trial, which the District Court again denied.

The Government presented an array of evidence during the four-day trial, including victim and law enforcement testimony, surveillance videos, license-plate reader ("LPR") data, cell-site location information ("CSLI"), vehicle location data, text messages, recorded telephone calls, and social media communications.

At the close of the Government's case, Righter moved for a Judgment of Acquittal based on insufficient evidence. The District Court denied the motion. The jury convicted Righter on all five counts, and the District Court sentenced him to a total of 280 months of imprisonment, followed by five years of supervised release. This timely appeal followed.

## II

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. On appeal, Righter challenges the District Court's decision to admit the March 29, 2023 video call, as well as the sufficiency of the evidence on all counts. We address each issue in turn.

## A

We review a ruling to admit or exclude evidence, if based on a permissible interpretation of the Federal Rules of Evidence, for abuse of discretion. *United States v. Saada*, 212 F.3d 210, 220 (3d Cir. 2000).

The District Court found that the probative value of the March 29 video outweighed any undue prejudice. It considered that only two months had elapsed between the carjackings and the video call, and the video showed "an extended clip that was described by a witness." Appx. 389. Righter contends that the video was inadmissible under Federal Rules of Evidence 401, 403, and 404.

The District Court did not abuse its discretion by admitting the video. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. As this Court has repeatedly emphasized, "Rule 401 does not raise a high standard." *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 109–10 (3d Cir. 1999). Singleton testified that one of the perpetrators carried a handgun with an "extended magazine to it," so that "it could hold . . . more bullets than any normal handgun would." Appx. 215. The video—which showed Righter in possession of this exact type of gun—

4

made it more likely that Righter was a perpetrator of the January 24 carjacking and had

used a firearm with an extended magazine during that incident.[2]  It also corroborated

Singleton's testimony, thus supporting his credibility.

Under Rule 403, a district court "may exclude relevant evidence if its probative

value is substantially outweighed by a danger of . . . unfair prejudice."  Fed. R. Evid. 403.

We accord "great deference" to a district court's Rule 403 ruling.  *United States v.*

*Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (en banc).  As the

District Court noted, given that the video call occurred only two months after the January

24 carjacking, and the gun in the video matched Singleton's description of the gun used

during the incident, the video's probative value was substantial.  The risk of prejudice

was limited.  Though the video showed Righter speaking with an incarcerated person and

holding a gun, Righter was at home, not in jail, and the act of holding a gun is not illegal.

We find no abuse of discretion in the District Court's conclusion that the video's

probative value outweighed any undue prejudice.

Righter's Rule 404 argument also fails.  "To be admissible under Rule 404(b),

evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2)

be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where

requested) about the purpose for which the jury may consider it."  *United States v. Green*,

617 F.3d 233, 249 (3d Cir. 2010).  Rule 404 applies to evidence of "any *other* crime,

---

[2]  Righter argues that the video was irrelevant because he "was not charged with any crime related to the possession of the firearm."  Appellant Br. 37.  But he was charged with "us[ing] or carry[ing] a firearm" during and in relation to the carjackings.  18 U.S.C. § 924(c)(1)(A).

wrong, or act," Fed. R. Evid. 404(b)(1) (emphasis added), but not to evidence "intrinsic" to, or "directly prov[ing]," the charged offense, *Green*, 617 F.3d at 248–49. Though we question whether the video falls within Rule 404's scope,[3] we need not reach that issue. Even if a Rule 404 analysis did apply here, the video would be admissible. The video's evidentiary value derived from its similarity to Singleton's testimony, not from inferences about Righter's character or general "propensity to possess guns." *United States v. Caldwell*, 760 F.3d 267, 283 (3d Cir. 2014). Therefore, it was "probative of a material issue other than character." *Green*, 617 F.3d at 250 (quoting *Huddleston v. United States*, 485 U.S. 681, 686 (1988)). As noted above, its probative value outweighed the risk of unfair prejudice. Finally, the District Court offered to instruct the jury that it could consider the video only "for a limited purpose," but Defense counsel rejected the offer. Appx. 470–71.

**B**

Righter challenges the sufficiency of the evidence on all counts. We exercise plenary review over a denial of a motion for acquittal based on the sufficiency of the evidence. *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009). "We review the evidence in the light most favorable to the Government, afford deference to a jury's findings, and draw all reasonable inferences in favor of the jury verdict." *United States v. Moyer*, 674 F.3d 192, 206 (3d Cir. 2012) (citation modified). "[W]e will overturn a

---

[3] The Government did not offer the video under Rule 404, and the District Court did not conduct a Rule 404 analysis.

6

verdict only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430–31 (3d Cir. 2013) (en banc) (citation modified).

**1**

First, Righter argues that the Government failed to present any evidence that he planned or participated in the carjackings, rendering the evidence insufficient for all counts.[4] This argument lacks merit. Though the Government did not present an eyewitness or DNA evidence that directly identified Righter as one of the perpetrators, the record is replete with circumstantial evidence of his involvement. We summarize only some of that evidence here.

The Government presented surveillance video and LPR data that identified the white Malibu as a vehicle registered to Miller's address and under his parents' names.

---

[4] Count One (conspiracy to commit carjacking) required the Government to prove: (1) an agreement between two or more people to commit the offense of carjacking; (2) that Righter intentionally joined the agreement, with knowledge of its objective; and (3) an overt act taken in furtherance of the conspiracy by a co-conspirator. *See United States v. Scarfo*, 41 F.4th 136, 196 (3d Cir. 2022) (describing the elements of conspiracy under 18 U.S.C. § 371). Counts Two and Four (carjacking and aiding and abetting) required the Government to prove that Righter "(1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation," or aided and abetted the same. *United States v. Applewhaite*, 195 F.3d 679, 685 (3d Cir. 1999) (citation modified). Counts Three and Five (using and carrying a firearm in furtherance of a crime of violence and aiding and abetting) required the Government to prove that Righter used or carried a firearm during and in relation to the carjackings or aided and abetted the same. *See* 18 U.S.C. § 924(c)(1)(A); *United States v. Stevens*, 70 F.4th 653, 661 (3d Cir. 2023). Therefore, to convict Righter of all counts, the jury had to conclude, *inter alia*, that he agreed to commit the carjackings, participated in the carjackings, and used or carried a firearm during the carjackings or aided and abetted a principal in doing so.

Text messages and CSLI indicated that Miller traveled to Righter's home approximately two hours before the carjacking on January 14.[5] CSLI reflected that Righter's and Miller's phones were located within an area encompassing the Wawa at the time of the carjacking. And approximately eleven minutes after the carjacking, Righter called Miller and then texted him the GPS location of the street block where the stolen Mercedes was eventually recovered. From this evidence and more, a reasonable juror could find that Righter planned and participated in the January 14 carjacking.

The same goes for the January 24 carjacking. On January 16, Righter asked Miller if he was "trying to take me and 3 *to get another one*. . . . I'll give you gas money." Appellee Br. 15 (emphasis added); Appx. 457.[6] CSLI from the relevant time period on January 24 was consistent with Miller traveling to Righter's location and then both men traveling to an area that included the location of the carjacking. Within minutes of the carjacking, Righter started an Instagram video chat with Miller and then messaged him: "[W]e going to the lot." Appx. 460, 558. A photo of a Lexus logo extracted from Miller's phone—which matched the logo on the interior of the stolen Lexus—had location data indicating that it was taken in a parking lot in Wilmington, Delaware. CSLI was consistent with both Righter and Miller traveling to, and then being in, an area that included the parking lot around the time of the photo. Again, the evidence is sufficient.

---

[5] The jury heard extensive evidence that a specific phone number and certain social media accounts belonged to Righter.

[6] A jury could reasonably infer that "3" was a nickname for the third associate. FBI Special Agent Matthew Kessler testified that he had "seen evidence for three and only three people involved" in the carjackings. Appx. 523.

To the extent Righter challenges his convictions under Counts Two through Five based on insufficient evidence that he was one of the gunmen, this argument also fails. *See* 18 U.S.C. § 2119 (requiring that a defendant act with "force and violence or . . . intimidation"); 18 U.S.C § 924(c)(1)(A) (requiring that a defendant "use[] or carr[y] a firearm").

There is sufficient evidence that Righter used a firearm during both carjackings.[7] Surveillance video from the January 14 incident showed the two gunmen leaving the parking lot in the Mercedes approximately a minute after the Malibu had departed the scene. Given that Righter texted Miller a GPS location from nearby the stolen Mercedes, a jury could reasonably infer that Righter was traveling separately from Miller—in the stolen Mercedes—and thus was one of the gunmen. As for the January 24 carjacking, a jury could infer from Righter's request to Miller to "take me and 3 to get another one" in exchange for "gas money" that Miller drove the Malibu, and Righter and a third associate were the gunmen. Appellee Br. 15; Appx. 457. Singleton testified that one of the perpetrators carried a gun with an extended magazine, which is the same type of weapon that Righter held on the video call with Henry approximately two months later. And

---

[7] Even if a reasonable juror could not find that Righter was one of the gunmen on January 14 or January 24, the evidence is sufficient to convict him of the carjacking and firearm accounts as an accomplice under 18 U.S.C. § 2. *See Rosemond v. United States*, 572 U.S. 65, 71 (2014) (noting that liability under § 2 requires "an affirmative act in furtherance of that offense" and "the intent of facilitating the offense's commission").

mere hours after the carjacking, Righter sent an Instagram message referencing a firearm in his possession, noting "dis slide [is] missing a piece." Appx. 466.[8]

The record contains ample evidence that Righter played a key role in planning and executing the carjackings. We decline to vacate his conviction on this ground.

**2**

Second, Righter contends that his convictions on Counts Three and Five cannot stand because there is no evidence that the weapons used in the carjackings were real firearms.

As used in 18 U.S.C. § 924(c), "firearm" refers to: "(A) any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." 18 U.S.C. § 921(a)(3). In *United States v. Beverly*, we held that a victim's testimony that the defendant had threatened him with a gun during a robbery and that the gun was a chrome-plated revolver was sufficient for the jury to conclude that the defendant had utilized a firearm. 99 F.3d 570, 572–73 (3d Cir. 1996). Even though the gun was not recovered and there was no evidence that it had been fired, the victim's proximity to the defendant and "ample time" to view the weapon made it unlikely that he was mistaken about the weapon's authenticity. *Id.* at 573. Furthermore, "[t]he act of threatening others with a gun [was] tantamount to saying that the gun is loaded and that the gun wielder will shoot unless his commands are obeyed."

---

[8] The jury heard testimony that a "slide" is a part of a handgun with multiple pieces.

10

*Id.* (quoting *Parker v. United States*, 801 F.2d 1382, 1384 (D.C. Cir. 1986)); *see also*

*United States v. Lake*, 150 F.3d 269, 271 (3d Cir. 1998) (evidence was sufficient where

both victims stated that the defendant had a gun, described it in some detail, and testified

that they experienced great fear).

The evidence here is likewise sufficient. Though no weapons were recovered,

both victims testified that the perpetrators threatened them with guns. Neither victim

could say definitively whether the guns were real, but Arora described a black, regular

handgun, and Singleton described a handgun with an extended magazine. Moreover,

unlike in *Beverly*, both victims here made physical contact with the weapons. Arora, who

grabbed one of the guns, testified that it felt "very rugged, detailed, pretty rough around

the edges." Appx. 149. When Arora held the gun, the perpetrator's tone became

"deeper" and "louder," and the situation "felt more intense." *Id.* When he was hit on the

head with one of the guns, it felt "pretty hard" and left swelling and bruising. Appx. 150.

Singleton testified that he was hit on the back of his head with the butt end of a gun,

leaving three welts. He described the gun that hit him as feeling "very heavy . . . metal,

you could tell there was weight behind it." Appx. 222. He also testified about his

familiarity with guns, stating that he "know[s] the weight to [a gun]." *Id.*

These detailed accounts—in addition to the fact that the perpetrators used the guns

to threaten the victims and compel their behavior—render it highly unlikely that the guns

were not real firearms. A reasonable juror could find that the weapons used in the

carjackings were firearms as defined in 18 U.S.C. § 921(a)(3).

11

**III**

The District Court did not abuse its discretion by admitting the March 29 video, and the evidence is sufficient to support Righter's conviction on all counts. Thus, we will affirm.